## SNELLEN et ux. v. BRAZORIA COUNTY.
### No. 12111.

Court of Civil Appeals of Texas. Galveston.

Oct. 20, 1949.

Rehearing Denied Nov. 10, 1949.

A. R. Rucks, of Angleton, for appellants.

Samuel J. Lee, of Angleton and Harrison & Wellborn, of Alvin, for appellee.

CODY, Justice.

The principal question here for decision is whether the commissioners' court of Brazoria County has authority to condemn a portion of the center of Grand Boulevard, a street in the unincorporated town of Pearland for the purpose of constructing a fire station to house a fire truck belonging to Brazoria county and which is used by the Pearland Volunteer Fire Department, an unincorporated association. The streets of Pearland are subject, of course, to control by the County Commissioners of Brazoria county just as any other road in the county which is located outside of an unincorporated town. See R.C.S. Art. 6703.

The streets and alleys which are located in the townsite of Pearland were dedicated to the public by the owner of said townsite in 1894 when the plat of said townsite containing adequate dedicatory words was duly filed for record and properly recorded in the County Clerk's office of Brazoria County and the lots were bought and sold with reference to said plat. The townsite has 5 tiers of blocks from north to south and has

10 tiers of blocks from east to west in each case, each such tier being separated from the other tiers by streets running north and south on the one hand and running east and west on the other. Grand Boulevard runs north and south and so is five blocks long and is the third street from the eastern-most street of the townsite which eastern-most street borders the townsite on the east. Grand Boulevard has an overall width of 120 feet. According to the plat, it might be inferred that it was contemplated that north bound traffic would move in a corridor 40 feet wide on the east side of Grand Boulevard, and that the south bound traffic would move in a corridor 40 feet wide on the west side of Grand Boulevard, leaving what we may term an "esplanade" in the center of the street. We so term it because the portion reserved in the center of the street is shown on the map to be blocked off from the cross-town streets and from the eastern corridor and western corridor. The "esplanade" is, of course, 40 feet wide.

In this proceeding, Brazoria county is seeking to condemn the interest which defendants own in the eastern half, or twenty feet of the "esplanade", in so far as it lies between blocks 22 and 23 of the townsite. As owners of the lots in block 23 fronting upon Grand Boulevard, the defendants are treated as the owners of the fee to the center of the street.

The evidence shows that Brazoria county acquired a number of fire trucks under authority of Vernon's Ann.Civ.St. Article 2351a—1 for the purpose of fighting fires outside the corporate limit of the cities and towns. One of these fire trucks was turned over by the commissioners' court to the Pearland Volunteer Fire Department which obligated itself, at least in form, to build a cement fireproof fire station to house the fire truck. In this connection, we do not consider it material to determine whether or not the individual members of the Volunteer Fire Company bound themselves by the contract, or whether the Pearland Volunteer Fire Department was such an unincorporated association as could enter into a contract, or whether said association was subject to being sued.

It is the position of appellants that the decision to construct the fire station on the "esplanade" of Grand Boulevard was taken upon the consideration that the parties thought said site could be acquired free of charge, whereas a substantial sum would have to be paid to get a privately owned lot for such purpose. Shortly prior to August 16, 1947 construction of the foundation of the building on the "esplanade" between blocks 22 and 23 was begun. On that date, John P. Snellen, and various other owners of lots in Pearland, brought a suit in the district court of Brazoria county against the members of the volunteer fire department and the commissioners' court to prevent the erection of said fire station upon said site. The plaintiffs in said suit alleged that such erection of the fire station in the street was an unlawful appropriation of a portion of Grand Boulevard, which was inconsistent with the use for which said Boulevard had been dedicated to the public. Further, that a fire station so situated would impair the use of the street as a thoroughfare, and that the same would constitute a traffic hazard. Trial in said district court case proceeded to judgment, and the judgment rendered herein cancelled the order of the commissioners' court which had purported to grant permission to the firemen to erect the fire station on the site involved, and the judgment enjoined such erection. Such judgment of the district court was duly appealed to this court, but upon motion of all the interested parties, the appeal in that case was postponed to await the filing and submission of the appeal in this case.

Subsequent to the rendition of the aforesaid judgment by the district court, the commissioners' court, on June 21, 1948, entered two separate orders involving the property constituting the proposed site of the fire station. One of said orders decreed that the center of Grand Boulevard, insofar as here involved, be closed for the purpose of erecting the fire station thereon. Said order was duly appealed to the district court and was, by judgment of the district court,

set aside and annulled. Said judgment of the district court has not been appealed and is now final. The other order, so entered by the commissioners' court on June 21, 1948, found that a necessity existed for Brazoria county to acquire a parcel of land in Pearland on which to locate a fire station to house the fire truck in question belonging to Brazoria county, and further found that the land here involved was best suited to the purpose of such fire station. The order directed the county attorney to acquire the site here involved by negotiation or by condemnation proceeding, if necessary. Thereafter the condemnation proceeding was duly instituted, and the regularity of said proceeding is not here questioned in any respect; so that the steps taken in that connection need not be here examined as to their validity or regularity.

On July 7, 1948, which was the date that the petition for condemnation was filed, special commissioners were appointed and they seasonably awarded J. P. Snellen and wife damages in the sum of $100.00 as the value of their interest in the fee in the land condemned. Said property owners seasonably filed their exceptions to the special commissioners' report, except as to the amount of the award. By said exceptions the property owners, appellants here, objected among other things:

A. That the commissioner's court had no power or jurisdiction to condemn the land in question because

(a) No authority is conferred by law on the commissioners' court to condemn land for the purpose of building a fire station.

(b) No authority is given the commissioners' court to condemn land for the use of an unincorporated association, in this case, the Pearland Volunteer Fire Department.

B. That Grand Boulevard was duly dedicated to and accepted by the public as a boulevard and that the commissioners' court was without power to dedicate a portion thereof for purposes inconsistent with those for which it was so dedicated and accepted; that said attempted condemnation is a subterfuge resorted to by the commissioners' court to accomplish the closing of a portion of the center of the street for use as a site of a fire station which the commissioners' court had no power to accomplish by a direct order closing same.

Thereafter the condemnation proceedings were tried de novo in the county court. And on March 24, 1949, judgment was there rendered ordering the decision of the special commissioners recorded in the minutes of the Brazoria county court and judgment was likewise rendered that Brazoria county recover the land sought to be condemned for the purpose of erecting a fire station thereon, and the judgment further adjudged that the property owners recover $100.00 as their damages. This appeal is from said judgment of the county court.

The defendants, the owners of the fee to the center of the esplanade, hereafter called appellants, predicate their appeal upon four points which are substantially as follows:

Point I. The county had no right to condemn the property belonging to the appellant property owners for the purpose of a fire station because no statute had declared the same to be a public purpose for which land may be condemned by a county.

Point II. (This point elaborates on Point I.)

Point III. Article 3264a authorizes a county to condemn land only where the land is necessary for the purposes for which it is sought to be condemned, and the evidence is here insufficient to support the finding that the condemnation of the land in question was necessary upon which to build a fire station, but, to the contrary, such evidence shows that there were numerous other equally available and suitable locations in Pearland upon lots privately owned upon which to erect the fire station.

Point IV. The land here sought to be condemned had already been dedicated to a public use and in such case there is no legal authority to condemn the land for another purpose which would destroy the public property for which the land had been previously devoted unless the necessity

therefore be so great as to make the enterprise one of paramount importance to the public, which cannot practicably be accomplished in any other way.

This is a proceeding under Art. 3264a, and the question of the wisdom or propriety of condemning the property in question is an administrative or political one with which this court is not concerned. Our only inquiry must be whether the county has the right or power to condemn the property under aforesaid statute for a fire station. The statute reads in part: "The right of Eminent Domain is hereby conferred upon counties of the State of Texas for the purpose of condemning and acquiring land, right of way or easement in land, private or public, except property used for cemetery purposes, where said land, right of way or easement is necessary in the construction of jails, courthouses, hospitals, delinquent and dependent schools, poor farms, libraries or for other public purposes, where such purpose is now or may hereafter be authorized by the Constitution or Statutes of this State."—If the county has the right to condemn the land in question, under said statute, it is in virtue of the aforesaid words of the statute, reading " * * * for other public purposes, where such purpose is now or may hereafter be authorized by the Constitution or Statutes of this State."

By Art. 2351a—1, enacted in 1941, commissioners' courts in all counties of the state were authorized " * * * to furnish fire protection and fire fighting equipment to the citizens of such county residing outside the city limits of any city, town, or village within the county * * *. The Commissioners Court shall have the authority to purchase fire trucks and other fire fighting equipment * * *." It was under this statute that Brazoria county acquired its fire trucks, including the one which it placed in charge of the volunteer firemen's company of Pearland under an arrangement, the details of which we have not thought necessary to set forth, but under which the fireman's company undertook to build a fire station and turn same over to the county.

The power of counties to house the fire fighting equipment and trucks, which the counties are authorized to acquire, so as to maintain same in a condition of readiness for instant use is necessarily implied, we believe, in the grant of express power to counties to acquire fire fighting equipment and fire trucks for the protection of its citizens outside of city limits. It was held by this court through its late Chief Justice Pleasants in Malloy v. Galveston County, Tex.Civ.App., 42 S.W.2d 163, writ refused, that, where the legislature had expressly empowered counties to levy a tax to purchase and improve lands for a county park, the county had also the power to acquire land by condemnation proceedings for that purpose; the decision holding that parks were among the public purposes for which condemnation was authorized by Art. 3264a in these words of said statute " * * * for other public purposes, where such purpose is now or may hereafter be authorized by the Constitution or Statutes of this State."

In the case of Tarrant County v. Shannon, 129 Tex. 264, 104 S.W.2d 4, 8, our supreme court held that Art. 3264a was broad enough to authorize a commissioners' court to condemn land for road purposes thereunder, and that the commissioners' court need not proceed under Arts. 6702–6716 for condemnation. The court rested its holding that roads were a public purpose within the meaning of the words of Art. 3264a " * * * for other public purposes, where such purpose is now or may hereafter be authorized by the Constitution or Statutes of this State", upon the authority of Malloy v. Galveston County, supra. The same basis, we believe, for holding that a park is a public purpose within the quoted language of Art. 3264a applies for holding that the necessary housing to keep fire fighting equipment in instant readiness for use is a public purpose within said quoted language. Certainly it cannot be denied that commissioners' courts were at least impliedly authorized to acquire by negotiation the necessary quarters for housing its fire trucks. And it cannot be supposed that the legislature intended that owners of private

property should have power to defeat such power by refusing to sell or hire such necessary quarters or housing on the land upon which to erect same. We think that the legislature evidenced its intention that the necessary quarters for housing fire fighting equipment should be a public purpose when it granted the power to the counties to acquire such equipment. See West v. Whitehead, Tex.Civ.App., 238 S. W. 976, writ refused; Dancy, County Judge v. Davidson, Tex.Civ.App., 183 S.W.2d 195; El Paso County v. Elam, Tex.Civ.App., 106 S.W.2d 393.

■ Here the evidence established that Pearland is about eight or ten miles from the nearest boundary of the city of Houston, and that it is on one of the highways, connecting Galveston and Houston, and that Pearland is rapidly growing, and now has between 450 and 700 inhabitants. We think that it could be inferred from the evidence that there were various vacant lots in the townsite which were as well or better located for a fire station as was the site which was found by the commissioners' court to be the site best suited for same but the determination by the commissioners' court of the necessity or propriety of placing one of its trucks at Pearland is not subject to review. Williams v. Castleman, 112 Tex. 193, 247 S.W. 263. And if, as we believe, the county had the right of eminent domain to condemn property within Pearland upon which to place a fire station, its selection of the property to be condemned for that purpose is conclusive in the absence of fraud. Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 88, 130 A.L.R. 1053. In the cited case, at page 89 of 143 S.W. 2d, the court adopted the following language "When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance."

■ The burden was upon the defendants, the owners of the property sought to be condemned in order to defeat the selection of the property by the commissioners' court to allege and prove that in selecting the site for the fire station, the commissioners' court was guilty of a gross abuse of its discretion, or of fraud. West Production Co. v. Penn, Judge, Tex.Civ. App., 131 S.W.2d 131, 132. If it can be said the defendants made the necessary allegations, we think the evidence fell far short of compelling the conclusion that in selecting the site, the commissioners' court either abused its discretion, or acted fraudulently. It is not contended that eighty feet width is not ample to accommodate any traffic which might move over the street in question in the foreseeable future. Indeed, it is inferable from the plat itself that the "esplanade" was never intended to accommodate the passage of traffic. It may have been intended by the dedicator that the "esplanade" would be beautified, and form a part of the town's park system. But this, in the more than fifty years which has elapsed since the townsite was laid out has never been done, and there was no evidence that it would ever be done.

■ On this appeal, we are not confronted with the question of whether the commissioners' court had the right or power to close the "esplanade", or to devote it to a different public purpose for which it was dedicated to and accepted by the public. For purposes of this opinion, we assume that appellants, as owners of property in Block 23, acquired not only the fee to the center of the "esplanade", but, as purchasers with reference to the plat, acquired the right to have the "esplanade" not diverted to other uses. However, this right was at most only a property right. This "esplanade" was not a cemetery, and was subject to condemnation in a proper case. So far as appellants were concerned, their property right to have the street maintained in conformity with the dedication was subject to condemnation within the limitation prescribed by Art. 1, Sect. 17, of the Texas Constitution, Vernon's Ann.St. And in the exercise of the right of condemnation, the damages were duly awarded appellants by the court, and no contention is made that such award was not ample.

█ Grand Boulevard was duly dedicated to and accepted by the public as a boulevard. As a general rule, property appropriated to the public purpose cannot be taken for another public use without express or implied legislative authority when such taking results in practical destruction of the prior use unless the subsequent taking is for a public purpose of greater or paramount importance which cannot be accomplished in any other practical way. See Central Power & Light Co. v. Willacy County, TexCiv.App., 14 S.W.2d 102; Bowers v. Machir, Tex.Civ.App., 191 S.W. 758; Kingsville Independent School District v. Crenshaw, Tex.Civ.App., 164 S.W. 2d 49. But we cannot hold that the application of that rule forbade the condemnation by the exercise of eminent domain of the site in question for a fire station. The rule against taking property dedicated for one public use for another public use has no application where the proposed use will not materially interfere with the operation of the existing one. The Willacy County case, supra.

█ Here, the entire width of the boulevard is 120 feet. The "esplanade" is forty feet wide, and is flanked by corridors, each of which is forty feet wide. The evidence shows that after more than fifty years (since 1894) with the exception of one block, only one side or corridor of the street has ever been shelled or used as a street. We think the evidence below was sufficient to support the conclusion that the fire station when completed will not impair the use of boulevard as a street. Whether the fire station will be ornamental does not appear, but there is no evidence that would compel or justify the conclusion that, as constructed, the fire station would be a public nuisance. We are not prepared to hold that the use of the site for a fire station was not a greater or more public interest than that to which the "esplanade" was originally dedicated. Particularly so since, after more than fifty years, no steps have been taken to create the "esplanade", or to make it a part of the town's park system.

Appellants' points are overruled, and the judgment of the trial court is affirmed.