

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

August 17, 1990

Honorable David M. Motley
Kerr County Attorney
323 Earl Garrett
Kerrville, Texas    78028

Opinion No. JM-1209

Re:    Authority of a county to
directly   fund   a   rural   fire
prevention district and related
questions    (RQ-1992)

Dear Mr. Motley:

You advise that the creation of a rural fire prevention district in part of Kerr County is contemplated. You ask first whether Kerr County may "directly fund" the district if it is created.

We note at the outset that you have not elaborated in your request on the nature of the proposed "direct funding" of the rural fire prevention district. In the absence of greater specificity in your request, we will assume in the following discussion that the funding of the district would be in the nature of contractual payments by the county for provision of fire protection services, by or through the district, to non-incorporated portions of the county within district territory. Article III, section 52, of the constitution prohibits donations by counties to "corporations," including political entities. Bexar County v. Linden, 220 S.W. 761 (Tex. 1920); see also Tex. Const. art. VIII, § 3 (taxation for public purposes only). Any funding of a rural fire prevention district by the county would have to be in furtherance of legitimate public purposes of the county, with adequate controls to insure that benefits to county residents are realized. See, e.g., Key v. Commissioners Court of Marion County, 727 S.W.2d 667 (Tex. App. - Texarkana 1987, no writ).

Inherent in your question, then, is the question whether payments by a county to a rural fire prevention district for provision of fire protection services further an authorized county purpose. Local Government Code section 352.001 provides that a county commissioners court

"may furnish fire protection . . . to the residents of the county . . . who live outside municipalities." Section 352.001 codifies, without substantive change, similar language previously appearing in article 2351a-1, V.T.C.S. Acts 1987, 70th Leg., ch. 149, at 707; see also Local Gov't Code § 1.001 (no substantive change intended). The provisions of article 2351a-1 were first adopted in 1941. Acts 1941, 47th Leg., ch. 360, § 1, at 567.

In 1949, section 48-d was added to article III of the constitution empowering the legislature to provide for the establishment of rural fire prevention districts and to authorize, with voter approval, levy of an ad valorem tax for the support thereof upon approval by districts' voters.

In 1957, the legislature enacted the provisions of article 2351a-6, V.T.C.S., authorizing the creation of rural fire prevention districts "for the protection of life and property from fire and for the conservation of natural resources." In 1989, the provisions of article 2351a-6 were codified, without substantive change, as chapter 794 of the Health and Safety Code. Acts 1989, 71st Leg., ch. 678, at 2230. Under the provisions of Health and Safety Code chapter 794, a county commissioners court, upon a petition by voters for creation of such a district in the county, and the making of findings as to the feasibility and benefit of a district, must fix the boundaries of the proposed district and submit the issue of its creation and the levy of the aforementioned tax to the voters residing within the boundaries. Health & Safety Code §§ 794.011 - 794.018. If the majority of the qualified voters voting approve the proposition, the district is created as a political subdivision of the state with authority to provide fire protection facilities to prevent and extinguish fires in the district. Id. §§ 794.019, 794.031(7). The governing body of the district is composed of five "fire commissioners" appointed by the commissioners court. Id. § 794.033.

It might be argued that once a rural fire prevention district is created in a county, the county loses its authority under Local Government Code chapter 352 to provide fire protection in the area of the county included in the district. Attorney General Opinion H-279 (1974) addressed this issue in responding to the question whether a county, the entire territory of which was included in a rural fire prevention district, might nevertheless contract with a city for the latter's provision of fire protection in areas

outside the city. In its discussion of the question, the opinion stated that while provisions of article 2351a-6 (now Health and Safety Code chapter 794) "suggest the power of fire protection districts is plenary, we do not believe they lend support, either expressly or impliedly, to the proposition that the power is exclusive." The opinion concluded:

> Although it well may be impractical and inefficient for a county to provide rural fire protection when that duty also is assigned to a rural fire prevention district, it is our opinion that a county is not precluded from doing so.

We adhere to the conclusion of Attorney General Opinion H-279 that a county retains authority to provide fire protection, under the provisions now in Local Government Code chapter 352, even in areas where a rural fire prevention district has been established.[1]

If, under Attorney General Opinion H-279, a county may arrange for the provision of such services through a municipality's fire protection facilities, we see no reason why it may not arrange for the provision of such services through the rural fire prevention district itself. Concededly, chapter 352 of the Local Government Code, the provisions now governing county fire protection matters, does not specifically provide for a county's contracting with a rural fire prevention district for fire protection services, while it does provide for such contracts with municipalities,

---

1. In support of our conclusion, we note that where a hospital district is created in county territory, the county is thereafter specifically prohibited by the constitution from itself providing medical services within district boundaries. Tex. Const. art. IX, §§ 4, 9; see also id. art. IX, § 13 (exception for mental health services); 36 D. Brooks, County and Special District Law § 26.28 et seq., (Texas Practice 1989). That the constitution and statutes are, in contrast, silent as to whether counties retain authority to provide fire protection in rural fire prevention district territory suggests, we think, that they do retain such authority.

adjoining counties, and incorporated volunteer fire depart-
ments.  Local Gov't Code § 352.001.  We do not think  these
provisions -- first  adopted  prior  to  those  in  the
constitution or statutes authorizing creation of rural  fire
prevention districts -- impliedly preclude counties'  making
arrangements  with  rural  fire  prevention  districts  for
provision of  such services.  Article 4413(32c),  V.T.C.S.,
the Interlocal  Cooperation Act,  in section  4,  authorizes
contracts between "local governments" -- including  counties
and other  "legally constituted  political subdivisions"  --
for "performance of any  governmental functions or  services
which all parties to the contract are legally authorized  to
perform."  Rural  fire  prevention districts  are  political
subdivisions authorized to provide fire protection services.
Health &  Safety  Code §§ 794.003,  794.031(7).  As  stated
above, it is our opinion  that counties are also  authorized
to provide the fire protection services in question.[2]

You express  concern in  your request  letter that  the
county's expending  tax  revenues, obtained  from  taxpayers
throughout the county, for  fire protection services in  the
portion of the county included in the rural fire  prevention
district "would technically tax  those outside the  district
for a  benefit they  would never  obtain."  We  think it  is
inevitable in the workings  of most governmental units  that

---

2.  Attorney General Opinion MW-375 (1981) concluded in
part that the portion of V.T.C.S. article 1606c -- now Local
Government Code section 352.019(b)  -- requiring the  county
fire marshal to coordinate the work of fire protection units
in the  county, was  inconsistent with  the  more  specific
provisions of article 2351a-6 -- now Health and Safety  Code
section 794.035 -- regarding the powers of the board of fire
commissioners of a rural fire prevention district, and  that
the latter  provisions  controlled, thereby  precluding  the
fire marshal from  coordinating fire protection  units of  a
district.

The county, in contracting with a rural fire prevention
district for the services you ask about will necessarily  be
requiring provision of services of a particular nature.  You
do not ask about, and we do not address here, the scope,  if
any, of  the fire  marshal's role  as coordinator  in  these
matters.

tax moneys raised from all the unit's taxpayers are sometimes applied to projects which do not equally benefit all the unit's citizens.

We do not understand you to suggest that the county, while "funding" the district, will not, or does not intend to, provide county residents in non-district territory over which the county has fire protection authority with any such services. Determinations as to allocation of expenditures for fire protection in the county will involve various factual considerations, such as the differing needs for such services in different parts of the county. Clearly, such determinations are, at least in the first instance, within the reasonable discretion of the commissioners court. See, e.g., Snellen v. Brazoria County, 224 S.W.2d 305 (Tex. Civ. App. - Galveston, writ ref'd n.r.e.) (commissioners court determination of location of county fire truck). Of course, in order to comport with the aforementioned constitutional prohibitions on donations and requirements that expenditures be for a public purpose, county payments to a rural fire prevention district for fire protection services in district territory must secure for county residents of such areas public benefits additional to those which would have been provided by the district absent county funding.

We understand your second question to be whether the county may "fund" a volunteer fire department for provision of fire protection services in non-incorporated areas of the county if the volunteer fire department has also contracted with a rural fire prevention district in the county for provision of fire protection services.

We have concluded with regard to your first question that the county retains its authority under chapter 352 of the Local Government Code to provide fire protection in non-incorporated areas of the county even if a rural fire protection district has been created encompassing such territory. Local Government Code section 352.001 specifically provides for a county's contracting with volunteer fire departments that are incorporated and located in the county for provision of fire protection services in non-incorporated areas of the county. We think it follows that a county may contract with a volunteer fire department that is incorporated for the provision of fire protection services in non-incorporated parts of the county, even where such areas are included in a rural fire prevention district. See Attorney General Opinion V-1214 (1951) (no authorization

for county contract for fire protection services with volunteer fire department that is incorporated).[3]

We caution, as in our discussion of your first question, that county "funding" of an incorporated volunteer fire department must be in consideration for services furthering a county purpose, with adequate controls to insure that benefits to county residents are thereby realized. Key v. Commissioners Court of Marion County, supra. You suggest a scenario wherein the county would be "funding" a volunteer fire department which itself was already performing fire protection services, under contract, for the rural fire prevention district. Obviously if county funding of the volunteer fire department, under this scenario, realized no additional benefit to the county, because the services in question were already being provided by the volunteer fire department under its contract with the district, such arrangements would contravene constitutional prohibitions on grants of public money and requirements that public expenditures be for a public purpose. See, e.g., Tex. Const. arts. III, § 52; VIII, § 3.

### S U M M A R Y

A county has, under Local Government Code chapter 352, and the Interlocal Cooperation Act, article 4413(32c), V.T.C.S., authority to contract with a rural fire prevention

---

3.   The Interlocal Cooperation Act would not appear, however, to independently authorize contracts with volunteer fire departments since the latter are not "political subdivisions" within the meaning of those provisions. Though volunteer fire departments are referenced in the constitution and statutes in various connections, there is no provision for their establishment as political subdivisions. See, e.g., Tex. Const. art. III, § 51-d (payment of assistance to survivors of members of "organized volunteer fire departments"); V.T.C.S. art. 6228f, § 2(a)(6) (defining "organized volunteer fire department" for purposes of survivors' assistance). But see Attorney General Opinion JM-821 (1987) (whether volunteer fire department is "governmental body" under the Open Records Act, article 6252-17a, V.T.C.S.).

district in the county for the latter's provision of fire protection services in non-incorporated areas of the county included in the rural fire prevention district. A county also has authority under chapter 352 to contract with an incorporated volunteer fire department for provision of fire protection services in non-incorporated areas, even if such areas are included in a rural fire prevention district. Adequate controls must be exercised in connection with such arrangements to insure that public benefits to county residents of such areas are thereby obtained.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General