**GUADALUPE–BLANCO RIVER AUTHORITY, Appellant,**

v.

**CANYON REGIONAL WATER AUTHORITY, Appellee.**

No. 04–05–00943–CV.

Court of Appeals of Texas, San Antonio.

June 21, 2006.

Rehearing Overruled Aug. 28, 2006.

David P. Blanke, Molly Cagle, Tanya D. Dement, Vinson & Elkins L.L.P., Roger P. Nevola, Law Office of Roger P. Nevola, Austin, James S. Frost, Frost & Allen, P.L.L.C., Seguin, for appellant.

David W. Ross, Ralph Brown, Law Office of Ralph Brown, P.C., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SARAH B. DUNCAN, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an interlocutory appeal from an order granting a partial summary judgment in favor of appellee, Canyon Regional Water Authority ("CRWA"). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(d) (Vernon Supp.2005). We conclude the trial court erred in rendering judgment in CRWA's favor and erred in denying summary judgment in favor of appellant, Guadalupe–

Blanco River Authority ("GBRA"). Therefore, we reverse and render in part, and reverse and remand in part.

GBRA developed Lake Dunlap, a man-made reservoir in Guadalupe County, for the purpose of generating hydroelectric power. The parties stipulated that the lake "is a popular site for recreational activities, such as boating, water skiing, jet skiing, and fishing, and such uses are regulated by GBRA. . . ." GBRA owns the lake and the surrounding land, and is statutorily charged with responsibility for the reservoir. Under an easement that GBRA granted to CRWA, CRWA draws water from Lake Dunlap. CRWA operates a nearby pumping station with a pipeline and intake structure that links the station to the lake. GBRA and CRWA are both agencies and political subdivisions of the State of Texas. Under their contractual arrangement, GBRA sells water drawn from Lake Dunlap to CRWA, which CRWA in turn sells to water districts and municipalities in the counties of Guadalupe, Comal, and Bexar.

In 2004, CRWA ran a new pipeline to and under Lake Dunlap and constructed a new intake structure in the lake. According to CRWA, restrictions on water withdrawals from the Edwards Aquifier continue to increase the demand for water from the Guadalupe River, which has necessitated this new construction project. CRWA began the project believing it already had the necessary land rights. GBRA disagreed, and sued CRWA, seeking declaratory and injunctive relief to prohibit CRWA's construction at any location not authorized by the easement. CRWA responded that the easement agreement permitted the new pipeline path and intake location. CRWA alternatively counterclaimed for condemnation of the property required for the project. GBRA moved for a partial summary judgment on two grounds: (1) that CRWA's new pipeline and intake structure are not authorized by the easement agreement and (2) CRWA cannot condemn the property and water rights it seeks. CRWA moved for a partial summary judgment on the ground that it had the right to condemn GBRA's property.

The trial court concluded that (1) CRWA had the right to proceed under the original easement and (2) a public necessity existed for the limited condemnation of GBRA's property and CRWA's intended use was paramount to GBRA's use of the property. On appeal, GBRA asserts that, although the parties' agreement allows CRWA to expand its facilities at Lake Dunlap, CRWA cannot do so without GBRA's written consent and cannot do so on property not included within the easement's grant. GBRA also asserts CRWA's condemnation counterclaim does not satisfy the "paramount purpose" test.

## SUMMARY JUDGMENT STANDARD OF REVIEW

When both parties file motions for summary judgment, each must carry its burden and neither may prevail because of the failure of the other to discharge its burden. *Villarreal v. Laredo Nat'l Bank,* 677 S.W.2d 600, 605 (Tex.App.-San Antonio 1984, writ ref'd n.r.e.). Where there are competing motions for summary judgment, and one is granted and the other denied, the appellate court determines all questions presented to the trial court. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). The reviewing court may affirm the judgment or reverse the judgment and render the judgment the trial court should have rendered, including rendering judgment for the other movant. *Id.* We consider the evidence supporting both motions. *DeBord v. Muller,* 446 S.W.2d 299, 301 (Tex. 1969).

## THE EASEMENT AGREEMENT

 In its motion for summary judgment, GBRA asserted CRWA's new pipeline and intake structure are not authorized by the easement agreement. We review the trial court's interpretation of easements de novo. *Nicol v. Gonzales*, 127 S.W.3d 390, 394 (Tex.App.-Dallas 2004, no pet.). The rules of contract construction govern the interpretation of easements. *See DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex.1999). Courts must examine the easement as a whole in light of the circumstances present when the parties entered the agreement. *Id.* at 101. The contracting parties' intentions, as expressed in the easement grant, determine the scope of the conveyed interest. *Id.* at 103.

 The easement agreement here states as follows: "[GBRA] ... does hereby GRANT, SELL AND CONVEY unto [CRWA] ... an easement and right-of-way over and across all that certain tract or parcel of land located in Guadalupe County, Texas, described in Exhibit 'A' attached hereto, and fully incorporated herein." Exhibit A describes two parcels: Parcel 1 is entitled "River Water Diversion Point and Pumping Station," and is not at issue here. Parcel 2 is entitled "An Easement For The Construction And Use Of A River Water Diversion Point And A 200' Restricted Zone Easement On The Surface Of Lake Dunlap." Parcel 2 is at the center of the underlying dispute. The description of Parcel 2 states as follows:

> Describing an intake diversion point and pipeline and a 200' radius restricted zone easement on the surface of Lake Dunlap as follows and as shown on the attached drawing marked Exhibit A:
> Beginning at a point on the east (river side) line of the above described Parcel No. 1 which point is 163.52' south of the northeast corner of Parcel 1, then north 82″ 52′ 14″ east a distance of 63.58 feet to the center point of a restricted zone easement on the surface of Lake Dunlap which consist of the area included within the arc of a 200' radius circle drawn from this center point.

> Parcel 2 is for the purpose of allowing the construction, operation, and maintenance of the intake diversion piping and to restrict further use of the area within the 200' radius on the surface of Lake Dunlap in accordance with the requirements of the Texas Health Department regulations.

According to CRWA, the area described by Parcel 2 is not a straight line, but all of the area within the arc of the 200–foot radius. Thus, CRWA contends it has the right to expand the water treatment plant and construct a new intake structure within the 200–foot radius. The new intake pipeline is within the 200–foot radius, and only the intake point itself is outside the radius. GBRA counters that Parcel 2 is a narrow plot of land that goes in a straight line from the pumping station on Parcel 1 to the existing intake structure in the lake. Because the new intake pipeline is not on this plot of land, GBRA asserts it is not authorized by the easement agreement. We agree with GBRA.

Exhibit A to the agreement describes the easement on Parcel 2 as: "an intake diversion point and a 200' radius restricted zone easement on the surface of Lake Dunlap...." More specifically, Exhibit A states that, "Parcel 2 is for the purpose of allowing the construction, operation, and maintenance of the intake diversion piping and to restrict further use of the area within the 200' radius on the surface of Lake Dunlap in accordance with the requirements of the Texas Health Department regulations."

Under the current regulations intakes must be "located and constructed in a manner which will secure raw water of the best quality available from the source." 30 Tex. Admin. Code § 290.41(e)(2). To meet this goal,

[a] restricted zone of 200 feet radius from the raw water intake works shall be established and all recreational activities and trespassing shall be prohibited in this area. Regulations governing this zone shall be in the city ordinances or the rules and regulations promulgated by a water district or similar regulatory agency. The restricted zone shall be designated with signs recounting these restrictions. The signs shall be maintained in plain view of the public and shall be visible from all parts of the restricted area. In addition, special buoys may be required as deemed necessary by the executive director. Provisions shall be made for the strict enforcement of such ordinances or regulations.

*See id.* § 290.41(e)(2)(c).

Thus, any grant of an easement for the purpose of constructing or maintaining the pipeline, also had to include an easement for the mandated restricted zone. Accordingly, the grant in the easement agreement here serves two purposes: to allow for the intake pipeline and to allow for the 200–foot radius. Because the easement agreement and the description of Parcel 2 speak in terms of a grant that serves two purposes, it is clear the parties intended the agreement to allow an intake diversion piping to be located, not anywhere within the radius, but only upon the narrow plot of land that goes in a straight line from the pumping station on Parcel 1 to the existing intake structure in the lake. Therefore, the trial court erred in rendering summary judgment in favor of CRWA and erred in denying GBRA's motion for summary judgment on the interpretation of the easement agreement.

## CONDEMNATION

CRWA moved for summary judgment on a single ground: it had the power to condemn the property, a public necessity existed for such condemnation, and the "paramount purpose" test is not triggered because GBRA had not shown that CRWA's use of the property would destroy or practically destroy GBRA's use of the property. In both its own motion for summary judgment and in its response to CRWA's motion for summary judgment, GBRA asserted: (1) the Texas Water Code precludes CRWA's proposed condemnation; (2) CRWA cannot acquire by condemnation the permit or regulatory authorization it needs from GBRA; (3) CRWA impermissibly seeks to condemn what the State of Texas presumably would contend is its property; and (4) CRWA produced no evidence satisfying the "paramount purpose" test.

### Texas Water Code and Regulatory Authorization

■ "A district or water supply corporation may acquire by condemnation any land, easements, or other property inside or outside the district boundaries, or the boundaries of the certificated service area for a water supply corporation, necessary for water, sanitary sewer, storm drainage, or flood drainage or control purposes or for any other of its projects or purposes, and may elect to condemn either the fee simple title or a lesser property interest." Tex. Water Code Ann. § 49.222(a) (Vernon 2000). Thus, as a general rule, CRWA has the right to seek condemnation for the purpose of achieving its purpose. Nevertheless, GBRA claims that CRWA's condemnation counterclaim in this case is barred by subsection (c) of Water Code section 49.222, which states: "The power

of eminent domain may not be used for the condemnation of land for the purpose of acquiring rights to underground water or of water or water rights." *Id.* § 49.222(c). GBRA argues that because CRWA is seeking to condemn GBRA's "control" of the lake's surface area, CRWA is seeking to "pluck from GBRA's regulatory jurisdiction a 200–foot area ... of Lake Dunlap."

The parties stipulated that "[t]he water right issued by the State of Texas authorizing the construction, operation and maintenance of the dam and reservoir is owned by GBRA." There appears to be no dispute that CRWA has a water purchase contract with GBRA to supply water necessary to be treated at the water treatment plant and then distributed to retail customers. There also is no dispute that the purpose of both the existing and the new intake structures is to transport water from the lake to the pumping station, water presumably purchased by CRWA from GBRA. We conclude CRWA is not attempting to acquire water rights or GBRA's regulatory jurisdiction over Lake Dunlap. Any rights to the water belong to GBRA, and CRWA will continue to buy the water from GBRA. Therefore, the Texas Water Code does not preclude CRWA from bringing a condemnation action against GBRA.

### Ownership of River Beds

■ CRWA's new intake structure is located in the bed of the Guadalupe River, which runs through the bottom of Lake Dunlap. Therefore, according to GBRA, CRWA is impermissibly attempting to condemn "what the State presumably would assert is its property." We disagree with GBRA's characterization of CRWA's actions. Even if the State owns the riverbed, CRWA may bring a condemnation proceeding against less than all the owners of a disputed easement. *See Metropolitan Transit Auth. v. Graham,* 105 S.W.3d 754,

760 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (noting there was "no reason why a portion of undivided interests in property cannot be the subject of otherwise lawful condemnation proceedings."). Also, CRWA had the right to bring a counterclaim for condemnation in the suit originally brought by GBRA. *See* TEX. PROP.CODE ANN. §§ 21.003; 21.017(a) (Vernon 2004). Therefore, the State's alleged ownership of the riverbed does not preclude CRWA bringing a condemnation action against GBRA.

### The "Paramount Purpose" Test

■ If property is already devoted to public use, a condemning authority may not seek to condemn that property if doing so would practically destroy the property's existing use unless the condemning authority shows that its intended use is of paramount public importance and that its purpose cannot be otherwise accomplished. *Sabine & E.T. Ry. v. Gulf & I. Ry.*, 92 Tex. 162, 46 S.W. 784, 786 (1898); *Central Power & Light Co. v. Willacy County,* 14 S.W.2d 102, 103 (Tex.Civ.App.-San Antonio 1929, no writ). Therefore, CRWA was entitled to condemn GBRA's property if the "paramount purpose" test was satisfied. However, the test is invoked only if GBRA first establishes that CRWA's condemnation of GBRA's property would practically destroy the existing use of that part of the lake it seeks to condemn. *See Willacy County,* 14 S.W.2d at 103.

■ GBRA asserted CRWA's condemnation of a second 200–foot radius restricted area would (1) result in a significant portion of Lake Dunlap no longer being available for recreation and other public uses and (2) obstruct GBRA's access to its dam. GBRA relied on the affidavit of Fred Blumberg, GBRA's Deputy General Manager and Chief Operations Officer, who stated:

One result of this proposed construction would be, to the extent that the restricted zones do not overlap, a second 200–foot restricted area that would materially impact the recreational use of Lake Dunlap, and potentially create a safety hazard, because boats and other watercraft would find it more difficult to make turns safely in the middle of the Lake.

Blumberg also stated that the 200–foot restricted area around the new intake structure "will remove from use an additional 78,400 square feet or approximately 1.8 acres of Lake Dunlap," and the "new restricted area would obstruct GBRA's access to critical portions of the dam." Blumberg's testimony is consistent with the regulatory requirement that "all recreational activities ... shall be prohibited in" the restricted area. *See* 30 Tex. Admin.Code § 290.41(e)(2)(c).

CRWA does not controvert GBRA's contention that CRWA's new waterline and intake structure would result in a significant portion of Lake Dunlap no longer being available for recreation and other public uses and would obstruct GBRA's access to its dam. Instead, in its response to GBRA's motion for summary judgment, CRWA contended the "existing use of [GBRA's] property, to impound water for electrical generation, will not be affected by the proposed underground waterline and intake structure."

However, we conclude that the summary judgment evidence submitted by GBRA establishes that the new pipeline and intake structure will result in a practical destruction of that part of the lake's existing use. Therefore, the paramount purpose test was triggered.

■ In its own motion for summary judgment, GBRA contended there was no evidence CRWA's purpose could not be otherwise accomplished. CRWA, on ap-

peal, contends GBRA's motion should not be construed as a no-evidence motion. We disagree. In GBRA's motion, GBRA quotes Texas Rule of Civil Procedure 166a(i), which provides that a party "may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex.R. Civ. P. 166a(i). "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." *Id.* Thus, once the paramount purpose test was triggered, the burden of proof shifted to CRWA to establish that its intended use is of paramount public importance and that its purpose cannot be otherwise accomplished. *See Sabine*, 46 S.W. at 786; *Willacy County*, 14 S.W.2d at 103. Assuming, for the purpose of this opinion only, that the new intake structure was of paramount public importance, CRWA never addressed whether its purpose could not be otherwise accomplished. Therefore, CRWA did not satisfy the paramount purpose test.

Because its right to condemn the land was the sole ground on which CRWA moved for summary judgment, the trial court erred in rendering judgment in favor of CRWA on its condemnation claim. Because CRWA did not bear its burden of producing summary judgment evidence raising a genuine issue of material fact to defeat GBRA's entitlement to a no-evidence summary judgment, GBRA was entitled to summary judgment on CRWA's condemnation claim as a matter of law.

## ATTORNEY'S FEES

■ The trial concluded that each party bear its own attorney's fees and costs. GBRA complains the court erred in denying it its fees because no party moved for judgment on the other's request for attor-

ney's fees. CRWA contends GBRA's motion for summary judgment "only reserved the determination of the amount of their alleged fees, not their right to recover attorney's fees." CRWA relies on the single introductory sentence to the GBRA's motion, which states "[GBRA] files this motion for partial summary judgment, seeking a resolution of all issues in this action, except the amount of its attorneys' fees...." Nowhere else in the motion does GBRA mention its entitlement to fees, and it does not request fees in its prayer for relief. CRWA's motion for summary judgment does not mention its entitlement to attorney's fees.

A motion for summary judgment must expressly present the grounds upon which it is made and must stand or fall on these grounds alone. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex.1997); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *see* TEX.R. CIV. P. 166a(c). A summary judgment cannot be affirmed on grounds not expressly set out in the motion. *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993). A judgment that grants more relief than requested is subject to reversal. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 202 (Tex.2001). We conclude neither party submitted the issue of fees to the trial court; therefore, the trial court erred in denying GBRA its fees.

## CONCLUSION

We reverse the trial court's judgment and render judgment in favor of GBRA and remand the cause to the trial court for further proceedings on the issue of attorney's fees.