**CANYON REGIONAL WATER AUTHORITY, Petitioner,**

v.

**GUADALUPE–BLANCO RIVER AUTHORITY, Respondent.**

No. 06–0873.

Supreme Court of Texas.

Argued: Nov. 15, 2007.

Decided: May 16, 2008.

Rehearing Denied Aug. 29, 2008.

---

5.  *Nitla,* 92 S.W.3d at 422.

Gregory S. Coleman, Marc S. Tabolsky, Yetter & Warden, L.L.P., Mike A. Hatchell, Locke Lord Bissell & Liddell, LLP, Paul M. Terrill III, Hazen & Terrill, P.C., Austin, TX, David W. Ross, Law Offices of

Ralph Brown, Dennis K. Drake, Attorney at Law, Ralph Brown, San Antonio, TX, for Petitioner.

David P. Blanke, Molly Cagle, Tanya D. Dement, Spikes Kangerga, Vinson & Elkins L.L.P., Roger P. Nevola, Law Offices of Roger P. Nevola, Austin, TX, James S. Frost, Kirkendall Frost & Allen, Seguin, TX, for Respondent.

Louis T. Rosenberg, Law Offices of Louis T. Rosenberg, San Antonio, TX, Lamar W. Hankins, San Marcos, TX, Lauren Jennifer Kalisek, Lloyd Gosselink Blevins Rochelle & Townsend, P.C., Austin, TX, for Amicus Curiae.

Justice GREEN delivered the opinion of the Court.

In this case we decide whether a state water authority properly relied on its existing easement as authority to construct a second water intake and pipeline to draw water from a lake to meet growing consumption demands. We hold that the easement did not grant rights for that construction. We next decide whether the water authority can condemn an easement for construction and operation of the second intake and pipeline. We hold that the prospective easement, which restricts access to only a small portion of the lake, does not practically destroy the lake's public recreational use. We therefore affirm the court of appeals' judgment in part, and reverse and remand in part.

**I**

Guadalupe–Blanco River Authority and Canyon Regional Water Authority are both agencies and political subdivisions of the State of Texas. The River Authority owns Lake Dunlap and uses it for generating hydroelectric power, flood control, public recreation, and providing water to the Water Authority. Under their contractual

arrangement, the River Authority granted an easement to the Water Authority, under which the Water Authority draws water through an intake and pipeline structure from the lake to its nearby pumping station. The Water Authority then sells that water to water districts and municipalities in Guadalupe, Comal, and Bexar Counties.

To satisfy increased consumption and increasingly strict aquifer restrictions, the Water Authority developed plans to expand its Lake Dunlap water treatment plant's capacity from six million gallons per day to sixteen million gallons per day. The original water intake and pipeline could not accommodate the increased volume, so the Water Authority proposed to add a second intake upriver from the existing intake and the lake's dam. Initially, the River Authority approved the proposal. But it changed its mind one month after construction began and sued the Water Authority, seeking declaratory and injunctive relief and arguing that the Water Authority's construction was outside of the scope of the easement. The Water Authority responded that the easement allowed the new intake location, and alternatively counterclaimed for condemnation of the property required to complete the project.

The River Authority obtained a temporary restraining order halting construction, which the trial court subsequently dissolved upon being persuaded that the River Authority had an adequate remedy at law and thus did not need injunctive relief.[1] The River Authority then moved for partial summary judgment on two grounds: (1) the easement agreement does not authorize the Water Authority's expansion, and (2) the Water Authority cannot

condemn the property right to draw water that it seeks. The Water Authority moved for partial summary judgment on the ground that it has the right to condemn whatever new right-of-way is necessary to construct the second intake. The trial court concluded that the Water Authority's easement allows the Water Authority to construct the second intake and gives it limited power to identify and describe any needed right-of-way. The trial court further held that the Water Authority has the right of eminent domain to take what it needs for the second intake, but that the River Authority can seek compensation for any taking. The River Authority appealed, and the court of appeals reversed the trial court, holding that the easement allows for only one intake. 211 S.W.3d 351, 356 (Tex.App.–San Antonio 2006). The court of appeals further held that the Water Authority presented no evidence showing that the Water Authority's "purpose could not be otherwise accomplished," *id.* at 358, and thus granted summary judgment for the River Authority on the condemnation claim and remanded the case to the trial court to determine attorney's fees, *id.* at 359.

The Water Authority appealed, arguing that its easement over Lake Dunlap's surface is sufficient to allow construction of the second intake and pipeline. Alternatively, the Water Authority argues that it may properly condemn any additional property under its general eminent domain powers. *See* Act of May 22, 1989, 71st Leg., R.S., ch. 670, § 4.03, 1989 Tex. Gen. Laws 2211, 2213–14. We hold that the easement does not give the Water Authority sufficient rights to construct the new intake pipeline, but that the Water Author-

---

1. After the trial court dissolved the restraining order, the Water Authority completed construction of the second intake structure and pipeline. The intake has now been in use for more than three years.

ity may obtain the necessary rights by condemnation.

## II

■ "When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented and render the judgment the trial court should have rendered." *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex.2004).

## III

■ The Water Authority argues that the plain language of its easement agreement allows it to build the second water intake and pipeline. The express terms of the easement determine the scope of the easement holder's rights. *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 103 (Tex.1999). "The rules of contract construction and interpretation apply to easement agreements." *Id.* at 100.

Here the River Authority granted to the Water Authority "an easement and right-of-way over and across all that certain tract or parcel of land ... described in Exhibit 'A.'" Exhibit A describes two parcels, the second of which is labeled "An Easement for the Construction and Use of a River Water Diversion Point and a 200' Restricted Zone Easement on the Surface of Lake Dunlap." It contains a metes-and-bounds description that corresponds with the location of the first water intake and pipeline, and a restricted zone easement on the surface of Lake Dunlap marked by a 200–foot radius from the inlet location. The description further provides that "Parcel 2 is for the purpose of allowing the construction, operation, and maintenance of the intake diversion piping and to restrict further use of the area within the

200' radius on the surface of Lake Dunlap in accordance with the requirements of the Texas Health Department regulations." As the court of appeals noted, the grant of the easement serves two purposes: to allow for the intake pipeline and to allow for its required 200–foot restricted zone radius. 211 S.W.3d at 356. The easement agreement cannot be read to grant the Water Authority any interest beyond those two express purposes. *See Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700–01 (Tex.2002) (holding that the scope of the conveyed interest is determined by the express terms of the grant and that "if a particular purpose is not provided for in the grant, a use pursuing that purpose is not allowed"). We thus affirm the court of appeals' decision that the easement does not itself convey to the Water Authority sufficient rights to construct the new water intake.

## IV

The Texas Legislature granted the Water Authority eminent domain power for various purposes, Act of May 22, 1989, 71st Leg., R.S., ch. 670, § 4.03, 1989 Tex. Gen. Laws 2211, 2213–14, including the authority to obtain rights it needs "to build, operate, and maintain facilities for the treatment and transportation of water," *id.* § 2.02(2), 1989 Tex. Gen. Laws at 2212. The River Authority does not dispute the Water Authority's power to condemn property for public use, but the River Authority argues that the Water Authority cannot condemn an easement to expand its Lake Dunlap water intake facilities because doing so would practically destroy the existing public use of the lake.

We have long held that condemnees may prevent a condemnation when the property is already devoted to another public use and the condemnee establishes that the new condemnation "would practically de-

stroy the use to which it has been devoted." *Sabine & E.T. Ry. Co. v. Gulf & I. Ry. Co. of Tex.,* 92 Tex. 162, 46 S.W. 784, 786 (1898). In *Sabine* one railroad company sought to condemn a right-of-way across another railroad's yard so that it could connect to a third railroad's existing lines. *Id.* at 784. The question presented was whether the first railroad could exercise its eminent domain power to condemn property already devoted to public use. *Id.* at 785. We held that if the condemnee can show that the condemnation would practically destroy the existing use, then to succeed with the condemnation the condemnor must show that "the necessity be so great as to make the new enterprise of paramount importance to the public, and it cannot be practically accomplished in any other way." *Id.* at 786–87. Lower courts remain unsettled regarding what proof is necessary to satisfy the practical destruction standard and invoke the paramount purpose test. *See Snellen v. Brazoria County,* 224 S.W.2d 305, 311 (Tex.Civ. App.–Galveston 1949, writ ref'd n.r.e.) (holding that condemning a portion of the center of a boulevard in an unincorporated town for the purpose of constructing a fire station did not materially interfere with the existing use of the boulevard and thus did not trigger the paramount importance requirement); *Cent. Power & Light Co. v. Willacy County,* 14 S.W.2d 102, 103 (Tex. App.–San Antonio 1929, no writ) (holding that the paramount importance requirement is triggered when "the proposed use will completely exclude the existing use"); *Tex. & N.O.R. Co. v. City of Beaumont,* 285 S.W. 944, 949 (Tex.Civ.App.–Beaumont 1926, writ ref'd) (concluding that condemnation could proceed if the new use would not "seriously impair or interfere with" the existing use). We have indicated that the standard may be met when "the second use to which the property is sought to be put will destroy, or, at least, materially

interfere with, that to which such property has been previously devoted." *Ft. Worth & R.G. Ry. Co. v. Sw. Tel. & Tel. Co.,* 96 Tex. 160, 71 S.W. 270, 274–75 (1903) (reciting the standard before holding that the proposed use "may be applied consistently with the prior use," so application of the standard was unnecessary). The River Authority must show that the Water Authority's proposed condemnation will practically destroy or at least materially interfere with the existing public use of Lake Dunlap to force the Water Authority to demonstrate that its purpose for condemnation is of paramount importance and cannot be practically accomplished in any other way.

█ The court of appeals relied on the affidavit of Fred Blumberg, the River Authority's Deputy General Manager and Chief Operations Officer, to hold that the Water Authority's new pipeline and intake structure results in practical destruction of part of the lake's existing use. 211 S.W.3d 351, 357–58. Blumberg stated:

> One result of this proposed construction would be, to the extent that the restricted zones do not overlap, a second 200–foot restricted area that would materially impact the recreational use of Lake Dunlap, and potentially create a safety hazard, because boats and other watercraft would find it more difficult to make turns safely in the middle of the Lake.

This evidence supports a conclusion that the Water Authority's new intake destroys a portion of Lake Dunlap's recreational use, but one must look to the entire use of the affected property, and not a portion of its use, when considering practical destruction or material interference. *See Quanah Acme & P. Ry. Co. v. Swearingen,* 4 S.W.2d 136, 138 (Tex.Civ.App.–Texarkana 1927, writ ref'd) (affirming an injunction commanding a railroad company to remove its platform because the platform "com-

pletely obstructed the entrance of an alley" already devoted to public use); *Sabine*, 46 S.W. at 785–86 (refusing to allow condemnation of a right-of-way across a railroad yard because allowing the condemnation would make the existing uses impracticable); *Snellen*, 224 S.W.2d at 311 (holding that condemnation of an esplanade between streets to build a fire station would not impair the existing public use of the street as a whole); *cf. Tahoe–Sierra Pres. v. Tahoe Reg'l Agency*, 535 U.S. 302, 327, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) ("[W]here an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking." (quoting *Andrus v. Allard*, 444 U.S. 51, 65–66, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979))). If the test applies only to a part of the affected property, a condemnee can nearly always shift the burden to the condemnor. Every utility pole, railroad, highway, or storm drain practically destroys the existing public use of a small portion of the right-of-way upon which it is built. Such an application of the *Sabine* test would render the practical destruction inquiry superfluous.

■ Texas Commission on Environmental Quality regulations require that a "restricted zone of 200 feet radius from the raw water intake works shall be established and all recreational activities and trespassing shall be prohibited in this area." 30 Tex. Admin.Code § 290.41(e)(2)(C). The River Authority argues that the Water Authority's construction of a second intake and pipeline creates a new restricted zone that makes nearly two acres of Lake Dunlap unavailable for recreation and other uses. But the record shows that the total surface area of Lake Dunlap covers 410 acres. The newly created restriction prevents access to less than one half of one percent of Lake Dunlap's total surface area.[2] Restricting recreational access to less than two acres of a 410–acre lake may practically destroy the recreational use of that portion of the lake, but it has no impact on the recreational use of the more than 400 remaining acres of the lake. With so much of Lake Dunlap's surface remaining unrestricted, the new intake's restricted zone cannot be said to practically destroy the lake's existing recreational use.[3]

Nor can the new restricted zone be said to materially interfere with the lake's recreational use. In an analogous context, we have held that "whether access rights have been materially and substantially impaired is a question of law." *State v. Heal*, 917 S.W.2d 6, 9 (Tex.1996) (deciding

**2.** Though the River Authority claims that 1.8 acres of Lake Dunlap's surface is unusable, the record indicates that significantly less area is restricted by the new intake zone. The record shows three restricted zones at the dam end of the lake. The Lake Dunlap Dam created the first one; the old intake created the second; the new intake creates the third. These zones overlap extensively, and the new intake's zone reaches very little previously unrestricted surface area. The new intake is roughly 150 feet from the dam, and the dam's restricted zone extends 200 feet. That means that it reaches nearly 50 feet beyond the new intake, covering well over half of the area required to be restricted by the new intake. A portion of the old intake's restricted zone overlaps with the remaining restricted zone of the new intake as well. By our calculations, the new intake's restricted zone likely reduces Lake Dunlap's available surface area by as little as 0.9 acres, or only 0.22% of the total 410–acre surface.

**3.** Three amici in this case argue that recreational use is not an existing public use under the practical destruction test because recreation is not the primary purpose of the River Authority. The River Authority's primary purpose is irrelevant when determining if recreation is a valid protected public use. We assume without deciding that recreation is a valid public use of state water. *See* Tex. Water Code § 11.024(6).

whether a landowner could recover compensation for a highway construction condemnation that impaired access to his land). Limiting access to a tiny portion of Lake Dunlap does not materially interfere with recreational use when so much of the lake remains unaffected. *Cf. City of San Antonio v. TPLP Office Park Prop.*, 218 S.W.3d 60, 66–67 (Tex.2007) (per curiam) (holding that a city ordinance closing an access point to a business park did not materially impair access to the park when several other access points remained unaffected). Though Blumberg expressed concern about the safety of boats and other watercraft turning in the middle of the lake, there is no evidence that an actual safety hazard exists, as boats can avoid any potential hazard by simply turning before reaching the new restricted zone. Taking into account all of the unaffected area of the lake where boats can be safely piloted, the new restricted zone will not materially interfere with the recreational use of the lake.

▮ The River Authority has alleged that the new intake destroys its ability to use Lake Dunlap for hydroelectric power generation, arguing that the new restricted zone obstructs the River Authority's access to critical portions of the Lake Dunlap Dam, which the River Authority must have to perform maintenance on the spillgates. But as the trial court held, the River Authority can still freely cross the restricted zone to access the dam because the zone only prohibits recreational activities and trespassing for third parties. As the owner of the lake, the River Authority cannot be a trespasser, and is not deprived of access by the restricted zone. *See Pilcher v. Kirk*, 55 Tex. 208 (1881) (defining a trespasser as "one who, *not having the title to land*, without the consent of the true owner, makes entry thereon" (emphasis added)).

The River Authority has failed to demonstrate that the restricted zone created by the Water Authority's new intake practically destroys or materially interferes with any existing public use of Lake Dunlap. We therefore need not answer whether the new use is of paramount importance and can be accomplished in any other practical way.[4] We hold that the Water Authority is authorized to condemn an easement necessary to construct and maintain its second water intake and pipeline. Accordingly, we reverse the condemnation portion of the court of appeals' decision.

## V

The Water Authority's easement on Lake Dunlap did not grant the right to construct a second water intake and pipeline. We thus affirm the court of appeals' interpretation of the easement agreement. However, because the Water Authority

---

4. Though our holding does not reach the question, we note that the Legislature has deemed the Water Authority's proposed use paramount.

> [I]n appropriating state water preference shall be given to the following uses in the order named:
> (1) domestic and municipal uses, including water for sustaining human life and the life of domestic animals, it being the public policy of the state and for the benefit of the greatest number of people that in the appropriation of water as herein defined, the appropriation of *water for domestic and municipal uses shall be*

> *and remain superior to the rights of the state to appropriate the same for all other purposes;*
> (2) agricultural uses and industrial uses, which means processes designed to convert materials of a lower order of value into forms having greater usability and commercial value, including the development of power by means other than hydroelectric;
> (3) mining and recovery of minerals;
> (4) hydroelectric power;
> (5) navigation;
> (6) recreation and pleasure; and
> (7) other beneficial uses.
> TEX. WATER CODE § 11.024 (emphasis added).

has the power to condemn the property and the condemnation would not practically destroy or materially interfere with any existing public use of Lake Dunlap, we reverse the condemnation portion of the court of appeals' judgment and remand the case to the trial court for further condemnation proceedings and to determine damages, if any, sustained by the River Authority.