TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00537-CV






Patricia Gordon Stark, Appellant


v.


Fernando H. Loya, Rebecca L. Loya, Timothy J. Myers, and Lisa G. Myers, Appellees






FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT

NO. 26,369, HONORABLE REVA TOWSLEE-CORBETT, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 This appeal concerns the scope of an access easement created in a decree partitioning
land. Appellant Patricia Gordon Stark, the owner of the partitioned tract of land burdened by the
easement, appeals the district court's declaration that appellees Fernando H. Loya, Rebecca L. Loya,
Timothy J. Myers, and Lisa G. Myers, as the owners of the land bordering Stark's tract, are
beneficiaries of the access easement. In three issues, Stark contends that the district court erred by
allowing parol evidence and submitting a question to the jury on the intent of the drafters of the
partition decree because the decree unambiguously created the access easement for the sole benefit
of the parties in the partition suit. For the reasons that follow, we affirm the judgment of the
district court. 


FACTUAL AND PROCEDURAL BACKGROUND


 The land subject to the partition suit was owned in undivided interests by members
of the Kellough family (the "Kellough property"). Prior to the partition, the Kellough property was
served by a single public road, Pecan Acres Road. Pecan Acres Road ended on the Kellough
property's northern boundary line and was connected to an "existing road" that crossed the Kellough
property and provided access to appellees' property. Appellees' property is located on the southern
boundary and, at the time of the partition decree, was owned by Oscar Davis and his wife. 

 Charles Kellough, one of the owners of an undivided interest in the Kellough
property, petitioned the district court to partition and equally divide the property among the family
members with undivided interests. The district court appointed commissioners to partition the land
and a surveyor to assist with the partition. After the commissioners filed their report with the court
and with the agreement of the parties, the district court entered its partition decree confirming the
commissioners' report. The decree was executed and recorded in the real property records of
Bastrop County in October 1989. 

 The partition decree states in relevant part: 


 That each party to whom a share has been allotted by the report above set forth shall
be vested, as against the other parties hereto, with fee simple title in both the surface
and mineral estates to the property thus allotted to him or her as described in the
report and the exhibits attached thereto, and hereby confirmed such exhibits being
attached hereto and made a part hereof and shown herein as Exhibits "A", "B", and
"C", and all of such tracts being subject to easements as described in the plats above
described and attached hereto for ingress and egress roadway and utility purposes.



 

 Attached to the partition decree and recorded in the real property records were (i) the
field notes (1) for a thirty-foot wide easement and a sixty-foot wide easement, and (ii) a survey plat
identifying the location of the partitioned tracts, the easements, and appellees' property. (2) The
thirty-foot wide easement follows a cattle path that crosses through the partitioned tracts numbers
3 and 4 (the "cattle path easement"). (3) Charles Kellough granted and recorded in the real property
records of Bastrop County the cattle path easement for "right-of-way" in December 1989 to Davis
and his wife, as the owners at the time of appellees' property. The easement was for "the purposes
of vehicular and pedestrian travel, for maintaining, rebuilding or replacing the roadway to be
constructed by Grantees within the Right-of-Way Easement, and for public utilities, of what ever
kind or character in the sole discretion of the Grantees." The sixty-foot wide easement follows the
perimeter of six of the partitioned tracts of land, providing access from Pecan Acres Road to each
tract and to appellees' property (the "perimeter easement"). The portion of the perimeter easement
in dispute runs along the boundary line between the partitioned tracts 3 and 4, encumbering
thirty feet on each side of the boundary line between the two tracts and extending to the boundary
line with appellees' property. (4) 

 Stark purchased tract 3 of the partitioned tracts in 1996, (5) and appellees purchased the
land formerly owned by Davis and his wife in October 2006. By agreement with the owner of the
land at the time, Amanda Roth, the land was "split [ ] down the middle," with the Loyas and Myers
each receiving a separate deed for their half of the land. Shortly after appellees purchased their land,
they began clearing and developing the perimeter easement so that it could be used to access their
property as an alternative to the cattle path easement. Stark thereafter filed this suit, seeking
injunctive relief and damages for trespass, contending that appellees were not beneficiaries of the
perimeter easement. Appellees filed a counterclaim, including seeking declaratory relief that they
were beneficiaries of the perimeter easement. 

 The case proceeded to a jury trial in July 2008. Stark and her husband testified on
her behalf. (6) Stark testified to her interactions with appellees, appellees' "bulldozing" in the
perimeter easement without her permission, the loss of trees and other damage from the bulldozing,
and her understanding of the beneficiaries of the perimeter easement. She testified that no individual
had attempted to use the perimeter easement on tract 3 of the partitioned tracts prior to appellees and
that appellees' means to access their property was the cattle path easement. When asked during cross
examination if the perimeter easement exists today, she testified that "[o]n paper it does. I mean it's
drawn out on the survey," but she testified that only "heirs to the Kellough estate" had the right to
use it. Mr. Stark testified to the number of trees that appellees destroyed in the perimeter easement
and the time that he spent because of appellees' actions, including his efforts to recover lost cattle
from downed fences. 

 Witnesses to testify for appellees included the Myers; the Loyas; Gary Reynolds and
Allen McMurrey, attorneys that represented parties in the partition suit; Dale Olson, the surveyor and
one of the commissioners in the partition suit; Tammy and Amanda Roth, prior owners of appellees'
property; and William Rivers, a title examiner expert. Timothy Myers testified to the circumstances
surrounding appellees' purchase of their property, that appellees discovered the perimeter easement
at the closing on their property, that Stark initially agreed to appellees' developing the perimeter
easement, and that appellees did not intend to use the cattle path easement after the perimeter
easement was developed. Fernando Loya testified consistently that appellees first learned of the
perimeter easement at their closing and that, when they approached Stark about developing the
easement, she said "anything to improve the land." He also testified that Mr. Stark initially assisted
with the development of the perimeter easement. Rebecca Loya and Lisa Myers testified to an
incident with Stark in which they felt threatened.

 Reynolds, McMurrey, and Olson testified to their respective involvement with the
partition suit and understanding concerning the portion of the perimeter easement located on the
boundary line between tracts 3 and 4 of the partitioned land. Reynolds testified that, based on his
memory and understanding that the reason this portion of the perimeter easement was created was
to provide a "more direct route" to appellees' property:


 Well, as I testified when you took my deposition, there is a road, an old pasture road,
. . . that zigs across those two Tracts, 3 and 4. And my memory was, that it just made
sense to try to put an easement right down between the two tracts so that it wouldn't
unnecessarily infringe on either of the tracts anymore so than necessary. And I do
recall that we had discussions about that and it was agreed that that's where the
easement would be.


* * *


 It's been a long time ago but I believe that the people that lived to the south had been
using that [old pasture] road. I certainly don't know for how long, but it was in use
at that time. The idea was simply to provide a more direct route to access that
property.



Consistently, McMurrey testified that the perimeter easement was to provide access to appellees'
property, and Olson testified that the portion of the perimeter easement between tracts 3 and 4 was
to provide access to appellees' property and the "purpose of that easement was to eliminate the
crooked driveway going down there, which crosses the property line several times, and to put it along
the property line." 

 Tammy Roth testified concerning her purchase of appellees' property from Davis and
the subsequent sale to Amanda Roth, to difficulties that she had with Stark concerning access to
her property, and to a lawsuit between herself and Stark concerning the cattle path easement. 
Amanda Roth also testified to her difficulties with Stark concerning access to her property and to
her sale of the property to appellees in 2006. William Rivers testified to his examination of
appellees' title that included, in his opinion, appellees' right to use the perimeter easement. He
opined that the reason for the perimeter easement on tracts 3 and 4 was to provide access to
appellees' property and to "clean up title on the squiggly easement." Rivers also testified to contact
that he had with Stark, including that he declined to remove the perimeter easement from the
exceptions on her title policy concerning tract 3 because, in his opinion, her property was
encumbered by the easement. 

 The district court's submission to the jury included a question on the intent of the
perimeter easement:

 

 Do you find from a preponderance of the evidence that the 60-foot access easement
created in the Kellough family partition was also intended to provide access to the
Oscar Davis property now owned by the Myers and the Loyas?


The jury answered this question "Yes." The district court thereafter entered judgment in favor of
appellees. (7) 

 In the judgment, the district court declared that, as owners of the bordering land,
appellees are beneficiaries of the perimeter easement, 


 shown on the partition plat . . . and described in the field notes . . . and set forth in the
Final Decree Confirming Report of Commissioners in Partition and Vesting Title
. . . , which Perimeter Easement is appurtenant to [appellees'] [p]roperty and which
Perimeter Easement crosses and burdens that certain 17.80-acre tract in Bastrop
County, Texas owned by [the Starks], which 17.80-acre tract is called Tract No. 3 in
the Kellough Partition Decree . . . and [appellees], as owners of the [property] are
entitled to the free and uninterrupted use of the Perimeter Easement for pedestrian
and vehicular ingress and egress to and from Pecan Acres Road, which is a county
road and public right-of-way, and [appellees'] Property and for utility purposes. 


 

The district court also awarded attorney's fees to appellees and enjoined the Starks from interfering
with appellees' rights to use the easement. This appeal followed.


ANALYSIS


 Stark contends that the partition decree and the report of commissioners confirmed
in the decree (collectively the "partition decree") are not ambiguous and that they only created rights
as to the perimeter easement in favor of parties to the partition suit and not in favor of appellees who
were non-parties. In her first and second issues, Stark contends that the district court erred in
allowing parol evidence (8) to alter and expand the clear language of the partition decree and in
submitting to the jury the intent of the perimeter easement. In her third issue, she contends that
the proper interpretation of the express terms of the partition decree only supports that appellees, as
non-parties, have no rights in the perimeter easement. 

 Stark's issues are dependent on her proposed interpretation of the partition decree. 
Stark relies on the language in the partition decree that "each party . . . shall be vested, as against the
other parties hereto, with fee simple title" and on language in the report of commissioners that "each
tract owner shall have access for roadway and utility purposes to each tract." She contends that the
partition decree could not make appellees' property the dominant estate of an easement without
Davis, the owner at the time, being a party to the partition suit. Stark also characterizes appellees'
claim in effect as a public easement and contends that there is no language in the partition decree of
an intent to create an easement for public use. 

 The partition decree, as an agreed judgment, is subject to the same rules of
interpretation and construction as a contract. See Gulf Ins. Co. v. Burns Motor, Inc., 22 S.W.3d 417,
422 (Tex. 2000). Similarly, basic principles of contract construction govern the terms of an express
easement. See Canyon Reg'l Water Auth. v. Guadalupe-Blanco River Auth., 258 S.W.3d 613, 616
(Tex. 2008); Marcus Cable Assocs., L.P. v. Krohn, 90 S.W.3d 697, 700-01 (Tex. 2002). Whether
a contract is ambiguous is subject to de novo review. See MCI Telecomms. Corp. v. Texas Utils.
Elec. Co., 995 S.W.2d 647, 650-51 (Tex. 1999). A court decides whether a contract is ambiguous
by looking at the contract as a whole in light of the circumstances present when the contract was
entered. See Sacks v. Haden, 266 S.W.3d 447, 451 (Tex. 2008) (per curiam); see also Marcus Cable
Assocs., 90 S.W.3d at 701("[A]n easement 'should be interpreted to give effect to the intention of
the parties ascertained from the language used in the instrument, or the circumstances surrounding
the creation of the servitude, and to carry out the purpose for which it was created.'"(quoting
Restatement (Third) of Property (Servitudes) § 4.1 (2000))). 

 When a court concludes that contract language can be given a certain or definite
meaning, then the language is not ambiguous, and the court is obligated to interpret the contract as
a matter of law. See Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). "An unambiguous contract
will be enforced as written, and parol evidence will not be received for the purpose of creating
an ambiguity or to give the contract a meaning different from that which its language imports." 
Sacks, 266 S.W.3d at 451 (citing Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154, 157
(Tex. 1951)). An ambiguity arises when the application of established rules of construction leaves
an agreement susceptible to more than one meaning and two or more potential meanings are
reasonable. See id.; Dewitt County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999). Only
where a contract is first determined to be ambiguous may the courts consider the parties'
interpretation and admit extraneous evidence to determine the true meaning of the instrument. 
See Sacks, 266 S.W.3d at 450-51. Applying these principles, we turn to our interpretation of
the partition decree. 

 Reviewing the express language of the partition decree, the decree confirms the report
by the commissioners of their proposed partition. It then states that the partition tracts are "subject
to easements as described in the plats above described and attached hereto for ingress and egress
roadway and utility purposes." The partition decree expressly shows (i) the location and description
of the partitioned tracts, the easements, and appellees' land; (ii) tracts 3 and 4 are the only tracts that
are burdened by the cattle path easement and by an extension of the perimeter easement; and
(iii) there are no similar extensions of the perimeter easement between other partitioned tracts. As
to the circumstances surrounding the creation of the perimeter easement, both appellees' property
and the Kellough property prior to the partition were accessed from Pecan Acres Road, and the
Kellough property was burdened by the cattle path easement that provided access to appellees'
property. By creating the perimeter easement between tracts 3 and 4 as an alternative to the cattle
path easement, the tracts are more equally burdened with the access easement to appellees' property. 
 Under Stark's proposed interpretation that only parties to the partition suit were
beneficiaries of the perimeter easement, the portion of the perimeter easement between tracts 3 and
4 would serve no apparent purpose as it would be a spur easement to a dead end. (9) Her proposed
interpretation also is inconsistent with her position that appellees, as the owners of the bordering
property, are beneficiaries of the cattle path easement shown on the survey plat. Further, as to
Stark's claim that appellees, in effect, seek a public easement, the basis of appellees' claim is their
ownership of the adjoining land, and the district court specifically limited its declaration as to their
rights to the perimeter easement accordingly:


 IT IS FURTHER ORDERED, ADJUDGED AND DECREED and the Court does
hereby declare that Defendants and Counter-Plaintiffs [ ], and their successors and
assigns, as owners of that certain . . . acres of land, more or less, in Bastrop County,
Texas, which is described more specifically in that certain Warranty Deed with
Vendor's Lien dated October 27, 2006, from Amanda Joyce Roth, as grantor,
recorded under Clerk's file number . . . and in Volume [ ], Page [ ], of the Official
Public Records of Bastrop County, Texas [ ], are beneficiaries of that certain 60-foot
wide access easement (hereinafter referred to for all purposes in this Judgment as the
"Perimeter Easement"). (10)


 

 Reviewing the partition decree as a whole and the circumstances surrounding
its creation, we conclude that the partition decree is not ambiguous as to the perimeter easement
and that the portion of the perimeter easement on tract 3 was created, at least in part, to
provide appellees, as the owners of the bordering property, access to their property from Pecan
Acres Road.  See Sacks, 266 S.W.3d at 451; Marcus Cable Assocs., 90 S.W.3d at 701; Coker,
650 S.W.2d at 393. (11) 

 Based on our conclusion that the express terms of the partition decree support the
district court's declaration that appellees are beneficiaries of the perimeter easement, we also
conclude that any error by the district court in allowing parol evidence or in submitting intent of the
perimeter easement to the jury did not probably cause the rendition of an improper judgment. 
See Tex. R. App. P. 44.1(a)(1). Further, even if we were to conclude that the partition decree as to
the perimeter easement was ambiguous, we would reach the same conclusion that the district court
did not err in its declaration based on the jury's finding that the intent of the perimeter easement was
to provide access to appellees' property. The testimony of the three participants in the partition suit
to testify was consistent and uncontroverted. They testified that, consistent with the perimeter
easement as shown on the survey plat, the portion of the perimeter easement on the boundary line
between tracts 3 and 4 was created to provide access to appellees' property. 

 

CONCLUSION

 

 Because we conclude the district court did not err in declaring that appellees are
beneficiaries of the perimeter easement created in the partition decree, we overrule Stark's issues and
affirm the district court's judgment. 



 __________________________________________


 Jan P. Patterson, Justice


Before Justices Patterson, Pemberton and Waldrop


Affirmed


Filed: August 12, 2009
1. Gary Reynolds, an attorney that testified at trial, testified that field notes refer to the metes
and bounds description of property.
2. The survey plat and field notes identify the land on the southern boundary of the Kellough
property as "Oscar A. Davis 172 acre tract." 
3. Stark does not dispute that appellees were beneficiaries of the cattle path easement and has
not appealed the portion of the final judgment concerning that easement. Appellee Timothy Myers
testified at trial that, unless a bridge was built, appellees' land was accessible only through the cattle
path easement or the perimeter easement. 
4. The portion of the perimeter easement burdening tract 4 was not at issue in this suit.
5. Stark purchased other tracts from the partitioned land that are not at issue, and tract 3 of
the partitioned land is titled in the assumed name of her business, except for a five-acre parcel that
is titled in her individual name. 
6. Mr. Stark, who was a third-party defendant, has not appealed the final judgment. 
7. The jury also found that Stark "unreasonably interfered with the easement rights of the
Myers and the Loyas," that the harm to the Myers and the Loyas "resulted from malice" by Stark,
and awarded exemplary damages of $25,000 to the Myers and $25,000 to the Loyas. The district
court did not award exemplary damages to appellees in its final judgment, and they have not
appealed the damages award.
8. The complained of testimony consisted of the testimony concerning the intent and
understanding of the parties to the partition suit as to the perimeter easement. 
9. Stark also contends on appeal that the portion of the perimeter easement on tract 3 ceased
to exist when she purchased adjoining tracts from the heirs to the partition suit because the purpose
of the easement ceased to exist--"one does not need an easement to travel across one's land." But
the purpose of the perimeter easement to provide access to appellees' property remains regardless
of Stark's easement rights. 
10. The judgment recites the same declarations as to the respective properties purchased by
the Myers and the Loyas from Amanda Roth except as to the names and recording information. 
11. In her reply brief, Stark argues that appellees' interpretation of the partition decree renders
the language in the commissioners' report that "each tract owner shall have access for roadway and
utility purposes to each tract" meaningless. But the tract owners' status as beneficiaries is not
mutually exclusive with appellees' status as beneficiaries.