

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00187-CV

**IN THE MATTER OF J.D.C.**

From the 436th District Court, Bexar County, Texas
Trial Court No. 2012JUV01630
The Honorable Lisa Jarrett, Judge Presiding[1]

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
            Karen Angelini, Justice
            Rebeca C. Martinez, Justice

Delivered and Filed:  October 8, 2014

AFFIRMED

The sole issue raised in this appeal is a challenge to the trial court's order modifying

J.D.C.'s disposition by committing him to the Texas Juvenile Justice Department (TJJD).  We

affirm the trial court's order.

### BACKGROUND

After he was adjudicated for committing the offense of assault on a public servant in

November of 2012, J.D.C. was placed on probation for one year in the care, custody, and control

of his mother.  On August 12, 2013, J.D.C.'s disposition was modified by extending his probation

to his 18th birthday and placing him in the custody of the Chief Juvenile Probation Officer.  On

---

[1] Associate Judge Yvonne M. Gomez presided over the disposition hearing and recommended the order modifying disposition, which was signed and entered by the Honorable Lisa Jarrett.

February 28, 2014, the State filed another motion to modify, alleging J.D.C. violated the conditions of his probation which required him to: (1) cooperate fully and obey all rules of the residential treatment placement facility where he was placed; and (2) have no harmful or threatening contact with any law enforcement officer. The trial court held a hearing on March 7, 2014, and thereafter modified J.D.C.'s disposition and committed him to TJJD. In support of this disposition, the trial court's order stated the following specific reasons:

> Child is in need of supervision and/or structured and/or therapeutic environment; Followed recommendation of State and Probation Department; Probation provided numerous services and child continues to break the law and/or violate term[s] and conditions of probation; Previous history of adjudications and failure to comply with probation conditions: Deferred Prosecution and Standard Probation, ELM/GPS, Intensive Clinical Services, Counseling through CHCS and Residential Placement (Cyndi Tayler Krier Juvenile Correctional Treatment Center); Child is in need of correctional environment; Child is danger to self or others; Child found delinquent in past and may commit new offense.

## STANDARD OF REVIEW

We review a trial court's order modifying a juvenile's disposition under an abuse of discretion standard. *In re J.P.*, 136 S.W.3d 629, 632 (Tex. 2004). "A court abuses its discretion when it acts in an unreasonable or arbitrary manner, or without reference to any guiding rules or principles." *In re P.E.C.*, 211 S.W.3d 358, 370 (Tex. App.—San Antonio 2006, no pet.).

Because J.D.C. previously had been adjudicated for engaging in delinquent conduct that was a felony, the guiding rules gave the trial court the discretion to modify his disposition to commit him to TJJD if the trial court found that J.D.C. "had violated a reasonable and lawful order of the court." TEX. FAM. CODE ANN. § 54.05(f) (West 2014). "[A]n abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision." *In re B.N.F.*, 120 S.W.3d 873, 877 (Tex. App.—Fort Worth 2003, no pet.). "An abuse of discretion [also] does not occur where the trial court bases its decisions on conflicting evidence." *Id.*

## DISCUSSION

In his brief, J.D.C. does not challenge the trial court's finding that he violated a reasonable and lawful order of the court or contend that the trial court abused its discretion in modifying his disposition. J.D.C.'s sole complaint is that the trial court should not have modified his disposition to commit him to the TJJD. Instead of committing him to TJJD, J.D.C. contends the trial court should have modified his disposition by placing him on probation in the custody of his mother because a change in J.D.C.'s medication approximately two weeks before the modification hearing had resulted in a positive change in his behavior.

Alfred Medellin, Jr. is a residential treatment officer at the Cyndi Taylor Krier Juvenile Correctional Treatment Center, which is a long-term residential program facility for juveniles. On October 22, 2013, J.D.C. became argumentative when Medellin ordered him to be seated after J.D.C. had used the restroom. Medellin again ordered him to be seated or he would receive a behavioral timeout. While Medellin moved away to lock the restroom, Medellin observed J.D.C. approach another juvenile resident and begin assaulting him by pulling him to the ground and punching him in the face. Medellin said the other juvenile resident did not do anything to provoke the assault. Medellin ran across the room and attempted a one-person side body hug to remove J.D.C. Once Medellin secured J.D.C., he called for another officer's assistance. J.D.C. continued to be combative, and another officer arrived and assisted Medellin in a two-person side body hug to restrain J.D.C.

Anthony Ramirez was a residential treatment officer in the behavior control unit at the Krier facility. The behavior control unit "is a seclusion area for the residents who have misbehaved in the general population." J.D.C. was sent to the behavior control unit on November 6, 2013. Later that evening, J.D.C. covered his entire body with his blanket which is a violation of the rules because the officers need to have "constant visual" of the resident to ensure the resident is not

engaging in any type of self-harm. When J.D.C. refused to remove the blanket in response to Ramirez's orders, Ramirez's supervisor gave Ramirez permission to physically remove the blanket. When Ramirez removed the blanket, J.D.C. attempted to hit him. Ramirez attempted a one-person standing body hug; however, J.D.C. continued to struggle, and they fell to the floor. J.D.C. then hit Ramirez three times in his face with a closed fist. Another officer, Cecilio Colunga, came to assist Ramirez, and they attempted a two-person standing body hug. J.D.C. continued to be aggressive, striking and kicking the officers. Once Colunga was able to restrain J.D.C.'s right hand on J.D.C.'s shoulder area, J.D.C. turned his head and bit Colunga's hand.

Julio Ruelas was a detention officer with the Bexar County Juvenile Detention Center. On February 2, 2014, Ruelas was working the behavior unit at the center which is used for residents who do not follow directives and instructions or fight with other residents. J.D.C. began banging the metal door to his room with his fist. Ruelas instructed J.D.C. to stop banging the door because it incites the other residents. When J.D.C. did not stop, Ruelas continued to observe him for a few minutes after which J.D.C. began banging the door with his head causing red marks on his face which is considered self-harm. After two officers arrived to assist Ruelas, they opened the door and tried to calm J.D.C. When J.D.C. put up his hands to strike one of the officers, two of the officers attempted to place him in a two-person side body hug. As the officers were attempting to restrain J.D.C., he bit Ruelas in the shin, and struck the other officer twice in the face. As they continued to struggle, J.D.C. hit Ruelas on the back of the head four times and then began speaking out in other personalities and blaming a personality named Sparkle for his actions.

J.D.C. testified that he was sent to the behavior unit on February 2, 2014, to calm down because he was getting into altercations with other residents who were calling him names because of his homosexuality. J.D.C. denied that he was banging his head on the door and stated Ruelas and the other officer came into his room and began physically attacking him for no reason. J.D.C.

testified that the assault lasted for ten or fifteen minutes. J.D.C. testified that he did not recall the October or November incidents at the Krier facility. J.D.C. stated that his medications had recently been changed, and he was able to better control himself.

The State offered into evidence a psychological evaluation from evaluations performed on J.D.C. on January 29, 2014 and February 2, 2014. The evaluation report states that J.D.C. had four separate referrals to juvenile authorities in Bexar County for multiple assault offenses, seven referrals in Bell County for various forms of assault, and several additional referrals in Coryell County with no detail provided regarding the basis for the referrals. J.D.C.'s mother reportedly stated that J.D.C. had been hospitalized for aggression or mental health reasons on 50 or 60 occasions starting at the age of 3. The psychologist who conducted the evaluation recommended that J.D.C. be placed "at a facility that has a strong correctional and/or disciplinary component as well as a counseling and psychiatric treatment component."

The State also introduced into evidence a pre-disposition report dated March 5, 2014. The pre-disposition report recommended that J.D.C. be committed to TJJD, and Cory Schlepp, the unit supervisor who signed the report, stated that the recommendation was for commitment because "Krier was our most intensive psychiatric facility that could meet [J.D.C.'s] needs, and he was unsuccessful, so we're asking that he be committed to the [TJJD]."

Despite the foregoing evidence, J.D.C. contends the trial court should have modified his disposition to place him on probation with his mother based on: (1) his testimony that the change in his medications has improved his behavior; (2) his mother's testimony regarding the support system she would use if J.D.C. was placed on probation with her and her fear for his ongoing mistreatment in TJJD because of his homosexuality; (3) Schlepp's testimony on cross-examination that J.D.C.'s cooperation had improved since the recent mediation change; and (4) the prosecutor's statement during closing that "The State recognizes and appreciates that [J.D.C.] has actually been

doing really well in detention since the last hearing." Although the evidence cited by J.D.C. supports the possibility that J.D.C. could continue to improve, the other evidence shows J.D.C.'s history of assaultive behavior and inability to follow the rules at even the most intensive psychiatric facility that could be offered to J.D.C. as an alternative to TJJD. Given J.D.C.'s history and the recommendations presented to the trial court, we cannot conclude that the trial court abused its discretion in modifying J.D.C.'s disposition and committing him to TJJD.

## CONCLUSION

The trial court's order is affirmed.

Catherine Stone, Chief Justice