Sabine & East Texas Railway Company v. Gulf & Interstate Railway Company of Texas.

No. 668. Decided June 23, 1898.

1. **Eminent Domain—Railway Connections—Crossing Intervening Road.**

The statutes of the State confer authority upon a railway to condemn the right of way of another road, when necessary to cross it for the purpose of making connection with a third railroad, although the first and last roads do not intersect. Const., art. 10, sec. 1; Rev. Stats., arts. 4440, 4441, 4442, 4445. (P. 166.)

2. **Same—Condemnation of Property Devoted to Public Use.**

The law does not authorize the condemnation of property which has been already dedicated to a public use when such condemnation would practically destroy the use to which it has been devoted (e. g., the condemnation, for a connection between two railroads, of lands acquired and needed by a third for yard purposes, and which would be rendered useless therefor if so crossed), unless the necessity be so great as to make the new enterprise of paramount importance to the public, and it can be practically accomplished in no other way. (Pp. 166-168.)

3. **Same—Railway Crossing—Point and Manner of Intersection—Powers of Commissioners.**

Differences between the corporations as to the point and manner of intersection as well as amount of compensation can be investigated and adjusted by the commissioners on condemnation proceedings (Revised Statutes, articles 4177, 4192, 4193), who, in case of such conflict of interests, should regard that of the public, not that

of the corporation, and should not take the property, so devoted to one public use, for another, unless it be found that the connection sought to be made is of so great importance to the public as to demand that another public use of less importance shall be set aside for its benefit, and that the new enterprise can not be accomplished in any other practical way. (Pp. 167, 168.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the First District, in an appeal from Jefferson County.

*Baker, Botts, Baker & Lovett* and *Votaw, Chester & Martin,* for appellant.—A railroad company can not condemn land or other property in this State for a lateral line. Const., art. 10, sec. 1; Rev. Stats., art 4440; Kyle v. Railway, 3 Willson C. C., sec. 436; Mills on Em. Dom., sec. 59; Elliot on Railroads, 923; Railway v. Wiltse, 24 Am. and Eng. Ry. Cases, 261.

Statutes conferring the power of eminent domain are strictly construed, and are never enlarged by presumption or intendment. Land acquired and held by one railroad company for yards, shops, etc., and of which it stands in need for such purposes, whether it has actually been so used or not, can not be expropriated by another railroad. Especially is this true in the absence of specific statutory provisions conferring such power. No such power is conferred by the Constitution or statutes of Texas. Const., art. 10, sec. 1; Rev. Stats., art. 4440; Parker v. Railway, 84 Texas, 336; Lewis on Em. Dom., sec. 254; Mills on Em. Dom., sec. 84; Railway v. Williamson, 91 N. Y., 552; In re Boston & A. Railway, 53 N. Y., 574; In re Water Commissioners, 66 N. Y., 413; In re Buffalo, 68 N. Y., 167; Tel. Co. v. Tel. Co., 65 Ga., 160; State v. Noyes, 47 Me., 189; Railway v. Commissioners, 118 Mass., 561; Railway v. Faribault, 23 Minn., 167; Packer v. Railway, 19 Pa. St., 211; In re N. Y. C., etc., Railway, 77 N. Y., 248; Commissioners v. Water Co., 104 Mass., 446; Railway v. Dayton, 23 Ohio St., 510; Pittsburg Railway Co.'s Appeal, 28 Am. and Eng. Ry. Cases, 266; Depot Co. v. St. Paul, 30 Minn., 359; Trust Co. v. Railway, 53 Fed. Rep., 687; Railway v. Railway, 2 So. Rep., 710; Railway v. Railway, 122 Ill., 473; Railway v. Railway, 124 Mass., 368.

Even if appellee were empowered to condemn land for a line such as the present one, for the sole purpose of connecting with another road, it should not be permitted to destroy the value and use of appellant's yard and side tracks in doing so, if such connection could be formed in a manner productive of less damaging and injurious consequences. Railway v. Railway, 49 Am. and Eng. Ry. Cases, 256; Railway v. Railway, 35 Am. and Eng. Ry. Cases, 263; Railway v. Railway, 77 Pa. St., 173; Railway v. Railway, 86 Texas, 545.

*Greer & Greer* and *Denson & Fickett,* for appellee.—The statutes of this State confer jurisdiction upon county courts of all condemnation proceedings, and the Constitution confers the right upon railway companies to cross all other railways in order to form connections with other

railways. Const., sec. 1, art. 10; Rev. Stats., arts. 4440, 4441, 4442, et. seq.; Railway v. Railway, 86 Texas, 537.

A connection with another railway intended for the purpose of interchanging business with it as a railway company and a common carrier is in no proper legal sense a lateral line, in that a lateral line is a mere switch or turnout to accommodate a private freighter in which the public has no interest. Kyle v. Railway, 3 Willson C. C., sec. 436.

If appellee was entitled to the crossing it had the right to condemn the land in its then condition as an open right of way with only appellant's main line thereon, and appellant's intended use of the land could neither enlarge nor diminish or in any way interfere with appellee's rights. Railway v. Lyons, 2 Willson C. C., sec. 139; Railway v. Cave, 80 Texas, 137; Railway v. Ruby, 80 Texas, 172.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the First Supreme Judicial District has certified to this court the following statement and questions:

"On the 26th of November, 1897, the appellee instituted proceedings, by presenting a petition to the county judge of Jefferson County, to condemn a crossing over appellant's road and right of way and land acquired for yard purposes, in the city of Beaumont. The alleged necessity for the condemnation was to connect the main line of the appellee's road with the Texarkana & Fort Smith Railway in the said city. The condemnation sought was finally obtained, over objections thereto by the appellant, made both before the commissioners of condemnation and in the County Court, and from the judgment of the County Court the Sabine & East Texas Railway Company has presented an appeal to this court. The main track of the appellee's road has been constructed over and across appellant's road to the depot of the former road, its depot being situate east of the track of appellant's road, while the depot and yards of the Texarkana & Fort Smith Railway are situate east of both tracks. The appellee now makes connection with the Texarkana & Fort Smith road by using five or six hundred feet of the Gulf, Beaumont & Kansas City Railway; this connection is expensive and subjects the appellee to much delay and inconvenience in the operation of its road in connection with the Texarkana & Fort Smith Railway, and it therefore proposes to make connection with said road by constructing a spur from its main line, crossing at a point east of appellant's track and crossing over the property of the latter to the yards of the Texarkana & Fort Smith Railway. The length of this proposed branch track, or spur, is about 1200 feet, and its intersection with the track of appellant will be distant from the present crossing of these railways about 270 feet, and the appellant's right of way and other land, subsequently acquired, where the proposed line will cross it, is 400 feet in width. We find from the evidence the following material facts: That in 1890, appellant, in addition to its right of way, acquired the land which it is proposed to condemn, for yard purposes, and that it has been held in good faith for

that purpose, and that, while it had not been used as a yard at the time of the institution of appellee's suit for condemnation, the officials of the appellee were notified two years before the institution of this suit that the land was acquired for yard purposes and would be used for that purpose, and that appellant would not consent that appellee might build a track across it. We further find that appellant is in need of increased yard facilities, and that the land is useful and desirable for yard purposes, and that it can not be used as a yard by appellant, if it is crossed by the appellee's proposed track. We find also that appellant might construct and operate a yard further to the south on its property, but that this would subject appellant to large increase of expense in the operation of its road, so long as its present business relation with the Texas & New Orleans Railway is continued. We find also that the appellee, without again crossing appellant's right of way, might effect a connection with the Texarkana & Fort Smith Railway at a point 300 feet beyond the yards of the latter, by constructing a track from the point of crossing of the appellant's and appellee's tracks, upon a curve of 20 degrees, and that while curves in tracks are objectionable they are not dangerous when used in yards; the chief objection to such tracks being the increased wear of the rails and cars, and that several tracks with a curve of 20 degrees are being and have been used for some years successfully in the yards of the Texas & New Orleans Railway at Houston and Algiers, La.

"The appellee's charter authorizes it to construct a road from Bolivar Point, Galveston County, to a point beyond Beaumont, and that the corporation was created under and by virtue of the general statutes of the State.

"First.—Is the right of way of one railway subject to condemnation to enable a railroad, which has already crossed the track of the first, to make a connection with a third railway, when the routes of the two latter roads do not cross or intersect, but each of said railways has a depot and a yard in the town in which the connection is sought?

"Second.—If the foregoing question is answered in the affirmative, can the property in question be condemned when, as we have found to be the fact, it was in good faith acquired, in 1890, for yard purposes, and that it has been since held with the intention and purpose to construct upon it sidetracks, switches, and other improvements incident and necessary to a railroad yard, and that such yard is now needed by the appellant, and that it is not practicable to use the land for yard purposes if the appellee is permitted to construct its proposed track across it?

"Third.—If the foregoing questions are answered affirmatively, should the question as to the right to condemn be made to depend upon a comparison of injury or inconvenience to appellant, in allowing it, with that which appellee would suffer in adopting another route and condemning other property, or should appellee's right to condemn be made to depend upon proof that the route sought is necessary?"

The following section of the Constitution and articles of the Revised

Statutes embrace the provisions of the law upon the subject of the first question propounded:

"Every railroad company shall have the right with its road to intersect, connect with, or cross any railroad; and shall receive and transport each the other's passengers, tonnage, and cars, loaded or empty, without delay or discrimination under such regulations as shall be prescribed by law." Const., art. 10, sec. 1.

"Art. 4440. Such corporation shall have the right to cross, intersect, join, and unite its railway with any other railway before constructed at any point on its route and upon the grounds of such other railway corporation, with the necessary turnouts, sidings, and switches, and other conveniences in furtherance of the objects of its connection.

"Art. 4441. Every corporation whose railway is or shall be hereafter intersected by any new railway shall unite with the corporation owning such new railway in forming intersections and connections, and grant to such new railway facilities therefor.

"Art. 4442. If the two corporations can not agree upon the amount of compensation for any such crossing, intersection, or connection, or the points and manner of the same, their differences shall be adjusted in the manner provided by law."

"Art. 4445. If any railroad corporation shall at any time be unable to agree with the owner for the purchase of any real estate or the material thereon required for the purposes of its incorporation or the transaction of its business, for its depots, station buildings, machine and repair shops, or for right of way, or any other lawful purpose connected with or necessary to the building, operating, or running its road, such corporation may acquire such property in the manner provided in this chapter."

The right to connect with another road makes it a lawful purpose for which condemnation can be had under the articles above quoted. The condemnation of the right of way of plaintiff in error for a crossing of the main line of defendant in error did not exhaust the power to condemn for other lawful purposes.

In answer to the first question we say, that the statutes of the State confer authority upon a railroad to condemn the right of way of another road when necessary to cross it for the purpose of making connection with a third railroad, although the first and last roads do not intersect.

To the second question we reply, that under the facts found by the Court of Civil Appeals the law does not authorize the condemnation of property which has already been dedicated to a public use when such condemnation would practically destroy the use to which it has been devoted. No express authority is given by our statutes to condemn such property, and the authority can not be implied from the general power conferred by the law unless the necessity be so great as to make the new enterprise of paramount importance to the public and it can not be practically accomplished in any other way. Railway v. Railway, 6 Biss., 221; National Docks, etc., Co. v. United Companies, 53 N. J. Law, 221; Railway v. City of Anderson, 139 Ind., 495; Penn. Railroad Company's Ap-

peal, 93 Pa. St., 150; Railway v. Railway, 77 Pa. St., 186; Matter of Railway, 79 N. Y., 68; Appeal of Pittsburg Junction Ry. Co., 122 Pa. St., 511; Sharon Ry. Co.'s Appeal, 122 Pa. St., 533.

The section of the Constitution above quoted and article 4440 of the Revised Statutes confer the right upon each railroad company to make connection between its road and the road of any other company, but do not give to either the absolute right to determine at what point nor in what manner the connection shall be made. The succeeding articles of the Revised Statutes which we have quoted show that it was intended by the Legislature that the two corporations should co-operate in making these crossings, intersections, and connections, and in case they should disagree upon either the place or manner of crossing or intersection or as to the sum to be paid, then the right must be acquired by condemnation as in other cases, and in such condemnation proceedings the differences between the corporations, whether as to point or manner of intersection or amount of compensation can be adjusted. This provision necessarily commits to the commissioners appointed for the purpose of condemnation the power to inquire into and determine all the questions involved in the differences between the parties. Railway v. Railway, 86 Texas, 544. In the case just cited there was a controversy as to the place and manner of the crossing by one road over the other, and the plaintiff in error in this court contended that the county court had no authority to settle the differences which had arisen between the parties. This court said: "Counsel for plaintiff in error claim that the laws of this State do not confer upon the county court authority to adjust the differences that might arise as to the point and manner of making the intersection and crossing of railroads. The articles quoted are all in one chapter upon the general subject 'right of way,' embracing the different circumstances under which such questions might arise. Article 4177 directs that differences as to the point and manner of making the crossing and connection shall be adjusted in the 'manner prescribed by law.' The Legislature understood that there was *a manner then prescribed*; and article 4180 provides, that differences arising concerning the acquisition of real estate for any lawful purpose of the corporation shall be determined according to the mode prescribed in that chapter. Making connections between roads is a lawful purpose; in fact, a duty enjoined upon both parties in the interest of the public. The commissioners are empowered, by article 4192, for the 'purposes mentioned in that chapter, to compel the attendance of witnesses;' and required by article 4193 to hear testimony and assess the damages. It is therefore within the power of the commissioners to investigate every matter of difference or grievance which may arise, and to adjust the trouble rightly and justly." The authority of the county court as held in the foregoing case was derived from the fact that the proceeding was upon appeal from a decision of the commissioners of condemnation, to

which·body the law had in the first place committed the matter for determination

When such a conflict arises·as that presented by the facts found in this case the private interest of the corporation can·not be regarded, but it is the duty of the commissioners for condemnation and of the courts to keep in mind the interest of the public, which is superior to that of any private person. Since the property is already devoted to public use as found by the Court of Civil Appeals, it is not to the interest of the public to destroy that use for the convenience or interest of another corporation and to establish simply another public use. The authorities before cited fully sustain the proposition that such property will not be taken in condemnation proceedings when the taking will destroy the use to which it is devoted, unless it be found that the constructing road or the connection sought to be made is of so great importance to the public as to demand that another public use of less importance shall be set aside for its benefit and that the new enterprise can not be accomplished in any other practical way. The first occupier of the ground is entitled to all the advantages derived from the establishment of the public use therein, and no question of convenience nor expense to the company seeking condemnation can be considered, unless it be such as to render the performance of the duty enjoined by law practically impossible by any other means which can be used by the constructing company.