# Supreme Court of Texas

No. 21-0507

Hidalgo County Water Improvement District No. 3,
*Petitioner*,

v.

Hidalgo County Irrigation District No. 1,
*Respondent*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

**Argued January 12, 2023**

JUSTICE LEHRMANN delivered the opinion of the Court.

In this eminent-domain proceeding brought by one political subdivision against another, the principal issue is whether governmental immunity bars such a proceeding. The court of appeals held that the condemnee entity is immune from suit and affirmed the trial court's order granting the entity's plea to the jurisdiction. Because we hold that governmental immunity does not apply in this context, we reverse.

# I. Background

The facts of this case are undisputed. Petitioner Hidalgo County Water Improvement District No. 3 (the Improvement District) and Respondent Hidalgo County Irrigation District No. 1 (the Irrigation District) both provide water and irrigation services in Hidalgo County. The Irrigation District operates an open irrigation outtake canal in McAllen through which most of the drinking water supplied to the City of Edinburg flows.

The Improvement District operates an underground irrigation pipeline along the right-of-way for Bicentennial Boulevard in McAllen. The Improvement District entered into an agreement with the City of McAllen to extend the irrigation pipeline in conjunction with the City's northward extension of the boulevard. The route of the proposed pipeline extension crosses under the Irrigation District's canal.

The Improvement District offered to purchase a subsurface easement from the Irrigation District, which rejected the offer. After negotiations failed, the Improvement District filed this condemnation action. *See* TEX. WATER CODE § 49.222(a) (granting water districts condemnation authority). The trial court appointed special commissioners, who set a hearing to assess the Irrigation District's damages caused by the condemnation. *See* TEX. PROP. CODE §§ 21.014–.015 (requiring the judge in a condemnation proceeding to appoint special commissioners to assess the condemnee's damages). The Irrigation District did not attend the hearing. The commissioners awarded the Irrigation District $1,900 in damages.

The Irrigation District timely objected to the commissioners' findings, *see id.* § 21.018(a), arguing that the Improvement District could not establish the paramount public importance of its pipeline. Under the paramount-public-importance doctrine, a condemnation authority may not condemn land already dedicated to a public use if doing so would effectively destroy its existing use, unless the condemnor can show that the intended use is of "paramount public importance" and cannot be achieved by any other means. 1A JULIUS L. SACKMAN, NICHOLS ON EMINENT DOMAIN § 2.17 (3d ed. 2023). The Irrigation District contended that the Improvement District's proposed easement would practically destroy the Irrigation District's canal and the proposed pipeline extension was not of paramount importance when compared to the existing canal.

Before the trial court ruled on the objection, the Irrigation District filed a plea to the jurisdiction. In its plea, the Irrigation District argued that it had governmental immunity from the condemnation suit and that the Legislature had not waived that immunity. The trial court agreed, granted the plea, and dismissed the suit.

The court of appeals affirmed. 627 S.W.3d 529, 540 (Tex. App.—Corpus Christi–Edinburg 2021). The court reasoned that the Improvement District's condemnation proceeding raises separation-of-powers issues by asking the judiciary to interfere with the Irrigation District's discretion regarding the disposition of its property. *Id.* at 537. Therefore, the court held that governmental immunity bars the suit, even though it poses no grave danger to the public fisc. *Id.* Having determined that governmental immunity is implicated, the court of

appeals then rejected the Improvement District's contention that Section 49.222 of the Water Code waives the Irrigation District's immunity from a condemnation suit. *Id.* at 540.

The Improvement District petitioned for review. Before this Court, the Improvement District argues that governmental immunity does not apply in the condemnation context for two reasons. First, the Improvement District contends that the modern justifications for governmental immunity are not served by applying the doctrine to condemnation suits. Second, it asserts that separating the power to condemn, which the Improvement District undoubtedly possesses, from the power to bring an action to condemn makes little practical sense. So, rather than address condemnation disputes involving governmental-entity condemnees under an immunity-and-waiver framework, the Improvement District argues that we should do so by applying the paramount-public-importance doctrine.

Alternatively, the Improvement District argues that, even if governmental immunity does apply in the condemnation context, Section 49.222 of the Water Code clearly and unambiguously waives that immunity by empowering the Improvement District to condemn any land inside or outside its boundaries for a variety of purposes. The Improvement District argues that this statutory grant of condemnation authority is broad enough to necessarily include a waiver of a governmental-entity condemnee's immunity.

The Irrigation District responds that immunity should apply in this context to prevent parties from using the judiciary to alter government policy. The Irrigation District disputes the Improvement

4

District's assertion that the paramount-public-importance doctrine constitutes the primary judicial mechanism for resolving condemnation disputes involving governmental-entity condemnees, arguing that the doctrine comes into play only *after* a court determines that the Legislature has waived the condemnee's immunity. Finally, the Irrigation District argues that the court of appeals correctly determined that Section 49.222 does not clearly and unambiguously waive the Irrigation District's immunity.

## II. Discussion

Sovereign immunity generally bars lawsuits against the State absent legislative consent to be sued. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009). Governmental immunity provides similar protection to the State's political subdivisions, including the water districts involved in this case. *See Reata Constr. Co. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). One component of such immunity—immunity from suit— implicates a court's subject matter jurisdiction and is thus properly raised in a plea to the jurisdiction.[1] *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016); *see also Rattray v. City of Brownsville*, 662 S.W.3d 860, 868 (Tex. 2023) (reiterating that, though "immunity does not *equate* to subject matter jurisdiction," it nevertheless "implicates" jurisdiction "such that an opinion in the face of a valid

---

[1] Immunity from liability—another component of sovereign immunity— "protects the state from judgment even if the Legislature has expressly consented to the suit." *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Unlike immunity from suit, immunity from liability is an affirmative defense that is waived if not pleaded. *Id.*

5

assertion of immunity may correctly be called 'advisory'" (citations omitted)).

## A. Recognized Limits on Sovereign Immunity's Scope

When reviewing a dispute about whether a claim against a governmental entity is barred by immunity, our focus typically is not on whether the entity is immune in the first instance—it usually is—but whether the Legislature has chosen to waive that immunity. *See Lueck*, 290 S.W.3d at 880. Today we are presented with the rare antecedent question of whether immunity applies in a certain type of proceeding, specifically, a condemnation proceeding.

Because sovereign immunity, and by extension governmental immunity, is first and foremost a common-law doctrine, we have recognized that the judiciary is responsible for defining the doctrine's boundaries and determining whether it applies in the first instance. *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 457 (Tex. 2020). That obligation—to evaluate whether the doctrine should be modified or abrogated under particular circumstances—remains squarely within the judiciary's province, while the Legislature determines the circumstances under which immunity is waived. *City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011) ("[Governmental immunity's] boundaries are established by the judiciary, but we have consistently held that waivers of it are the prerogative of the Legislature."); *see also Tex. Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 592 (Tex. 2001) (Hecht, J., concurring) ("The common-law rule of immunity in Texas was the judiciary's to recognize, and it is ours to disregard." (internal citations omitted)).

6

In determining whether sovereign immunity applies in the first instance, we consider the nature and purposes of the doctrine as guides. *City of Conroe*, 602 S.W.3d at 458. As we have reiterated on numerous occasions, the justifications for this longstanding common-law rule have evolved over the centuries. Our modern jurisprudence justifies the doctrine as a means of (1) protecting the public fisc by shielding tax resources from being diverted to pay litigation costs and money judgments and (2) preserving the separation of powers and the Legislature's prerogative to apportion tax dollars to their intended purposes. *See, e.g.*, *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015).

With those purposes in mind, this Court has recognized limits on the doctrine's reach. For example, in *Reata*, we reiterated that "when an affirmative claim for relief is filed by a governmental entity, . . . immunity from suit no longer completely exists" for that entity. 197 S.W.3d at 376. Specifically, when a governmental entity files suit or intervenes and seeks monetary relief, it is no longer immune from suit for "claims against it which are germane to, connected with and properly defensive to" the governmental entity's own claims, at least to the extent that the relief sought does not exceed the amount necessary to offset the entity's recovery. *Id.* at 377. In such circumstances, we explained, "we see no ill befalling the governmental entity or hampering of its governmental functions." *Id.* at 376–77.

It is also well settled that immunity does not bar ultra vires suits against state officials. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). That is, sovereign immunity does not prohibit a suit

7

alleging that a state official has acted without legal or statutory authority and seeking only prospective relief requiring the official's compliance with the law, even if the requested declaration would compel the payment of public funds. *Id.* We have reasoned that such suits "do not seek to alter government policy but rather to enforce existing policy." *Id.*

Finally, we recently held that governmental immunity does not bar a suit under the Expedited Declaratory Judgment Act (EDJA), *City of Conroe*, 602 S.W.3d at 459, which allows municipal bond issuers to bring an expedited declaratory-judgment action in rem to confirm the validity of a proposed public-securities issuance, *see* TEX. GOV'T CODE § 1205.021. The purpose of this expedited procedure is to "stop 'the age old practice allowing one disgruntled taxpayer to stop the entire bond issue by simply filing suit.'" *Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 149 (Tex. 1982) (construing the EDJA's predecessor statute). We noted in *City of Conroe* that in rem jurisdiction is dependent on the court's control over the defendant res, and the effect of an in rem judgment is limited to the property that supports jurisdiction. 602 S.W.3d at 458. These distinctive characteristics of in rem jurisdiction proved relevant to whether immunity applied because an EDJA suit, by its nature, does not impose personal liability and thus requires no payment to satisfy a resulting judgment. *Id.* Consequently, we noted that an EDJA suit "do[es] not subject governments to the 'costs and consequences' of improvident government actions" because the entities the Act intends to protect are governmental entities themselves. *Id.*

## B. Historical Background of Condemnation Suits

This case asks how sovereign immunity interacts with a second power inherent to the state's status as a sovereign: eminent domain. *See* TEX. CONST. art. I, § 1. Like sovereign immunity, the sovereign's power to condemn property for public use is both ancient and foundational to the nature of sovereignty itself. *Tex. Highway Dep't v. Weber*, 219 S.W.2d 70, 72 (Tex. 1949) (describing eminent domain as "a right inherent in organized society itself"); *see also* PUBLIUS CORNELIUS TACITUS, ANNALS OF TACITUS bk. I, at 75 (Clifford H. Moore trans., Harvard Univ. Press 2003) (1925) (discussing Emperor Tiberius's payment of just compensation to a Roman Senator whose house was damaged by the construction of a public road and aqueduct).

The Texas Legislature has long imbued some condemnors with the power to condemn public land for certain purposes. *See, e.g.*, *Humble Pipe Line Co. v. State*, 2 S.W.2d 1018, 1019–23 (Tex. App.—Austin 1928, writ ref'd) (noting that the Legislature conferred the right of eminent domain on pipeline companies in 1919, including "the right to lay [their] pipe lines across and under any public lands belonging to the state"); *Imperial Irrigation Co. v. Jayne*, 138 S.W. 575, 582 (Tex. 1911) (holding that the Irrigation Act of 1895 "provide[d] for the acquisition of dam and reservoir sites on the public school lands as well as on all other lands, when necessary, to the creation of irrigation projects"). Condemnation proceedings instituted under these legislative grants of authority naturally raise both sovereign-immunity and eminent-domain considerations. Accordingly, understanding how courts have

historically confronted cases jointly raising these two foundational issues is particularly relevant to how we should handle them today.

To that end, we have long resolved issues arising from the condemnation of land already dedicated to a public use, including publicly owned land, by applying the paramount-public-importance doctrine. *See Sabine & E.T. Ry. Co. v. Gulf & Interstate Ry. Co.*, 46 S.W. 784, 786 (Tex. 1898); SACKMAN, *supra*, § 2.17 (describing the doctrine as the near-unanimous Anglo–American rule). As noted, under this doctrine, a condemnee may prevent a condemnation of property already devoted to public use if (1) the condemnee first establishes that the condemnation "would practically destroy the use to which [the property] has been devoted," *Sabine*, 46 S.W. at 786, and (2) the condemnor then fails to show that "the necessity be so great as to make the new enterprise of paramount importance to the public, and it cannot be practically accomplished in any other way." *Id.*

We have repeatedly and consistently applied this doctrine to condemnation suits against political subdivisions. *See, e.g., Canyon Reg'l Water Auth. v. Guadalupe–Blanco River Auth.*, 258 S.W.3d 613, 616–17 (Tex. 2008) (suit by water authority to condemn an easement for the construction of a second water intake and pipeline on a lake owned by the river authority); *Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 882 (Tex. 1973) (suit by nonprofit organization challenging a school district's condemnation of city park land); *Harris Cnty. Drainage Dist. No. 12 v. City of Houston*, 35 S.W.2d 118, 122 (Tex. Comm'n App. 1931, holding approved) (noting that the city would have the right to exercise eminent-domain authority with respect to property

10

owned by the drainage district, subject to the paramount-public-importance doctrine); *Fort Worth Improvement Dist. No. 1 v. City of Fort Worth*, 158 S.W. 164, 170 (Tex. 1913) (affirming injunction preventing an improvement district from maintaining levees that threatened to destroy municipal property, based in part on application of the paramount-public-importance doctrine). Despite nearly a century of precedent discussing this doctrine, neither the parties nor this Court raised the specter of governmental immunity in those cases. Given that immunity from suit is jurisdictional, the absence of any discussion of sovereign immunity in these cases is particularly striking. "Courts are empowered to note potential jurisdictional defects sua sponte," and by doing so, a court "discharges its duty to ensure that the court itself is functioning in an authorized and properly judicial capacity." *Rattray*, 662 S.W.3d at 867–68; *cf. Kinnear v. Tex. Comm'n on Hum. Rights ex rel. Hale*, 14 S.W.3d 299, 300 (Tex. 2000) (holding that the court of appeals erred in raising the issue of immunity from liability sua sponte because, unlike immunity from suit, immunity from liability is waived if not pleaded).

Relatedly, the notion that governmental immunity may even apply in condemnation proceedings has arisen quite recently. The parties point to no Texas case law before 2010, and we have found none, in which the appellate court squarely addressed a governmental entity's argument that it enjoyed immunity from a condemnation suit.[2] *See*

---

[2] In *Burlington Northern & Santa Fe Railway Co. v. City of Houston*, a railroad attempted to condemn an easement to build a rail line through city

11

*Dall. Area Rapid Transit v. Oncor Elec. Delivery Co.*, 331 S.W.3d 91, 107 (Tex. App.—Dallas 2010) (holding that regional transportation authorities' governmental immunity barred an electric utility's eminent-domain action), *vacated on other grounds*, 369 S.W.3d 845 (Tex. 2012). In vacating the court of appeals' judgment in *Oncor*, we assumed without deciding that immunity applied and held that, if immunity existed, it had been waived. *Oncor Elec. Delivery Co. v. Dall. Area Rapid Transit*, 369 S.W.3d 845, 849 (Tex. 2012); *see also In re Lazy W Dist. No. 1*, 493 S.W.3d 538, 544 (Tex. 2016) ("We have never decided whether a governmental entity is immune from suit to condemn its property, and we need not do so today." (internal citation omitted)).

## C. Analysis

With this historical and legal background in mind, we turn to the issue presented: does governmental immunity bar the Improvement District's condemnation suit? Considering the purposes governmental immunity serves, its nature, and the development of our immunity and eminent-domain precedent, we hold that the Irrigation District is not immune from this suit.

First, "an important purpose" of immunity is "to shield the public from the costs and consequences of improvident actions of their governments." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Condemnation proceedings do not challenge improvident government

property, and the court of appeals summarily noted that cities are immune from suit absent waiver but held that the city's immunity was waived by statute. 171 S.W.3d 240, 245–46 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

12

action; indeed, they challenge no government action at all. Rather, they involve the lawful exercise of authority to appropriate property for the benefit of the public. *See* TEX. PROP. CODE § 21.012. Second, like EDJA suits, condemnation proceedings against governmental entities are in rem and do not threaten the public treasury except to the extent the condemnee entity chooses to participate. *See City of Conroe*, 602 S.W.3d at 458. And as the Improvement District points out, if the condemnation proceeding is successful, the condemnee entity ultimately recovers money. *See KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 191 (Tex. 2019). The Irrigation District attempts to undermine this fact by arguing that the condemnation could shift certain risks associated with the pipeline's construction and operation from the Improvement District to the Irrigation District. But this argument relies solely on speculative and indeterminate future harms. *See Brown & Gay*, 461 S.W.3d at 129 (rejecting speculation that declining to extend sovereign immunity to a private contractor would make it difficult for the government to engage talented private parties for fear of personal liability because it failed to account for a private party's ability to manage any liability exposure through insurance coverage). Even if those harms materialize, and the risk actually shifts from the Improvement District to the Irrigation District,[3] the result—at least in this case—is a reallocation of risk between two public entities. The net effect on the public fisc is zero.

---

[3] Indeed, it is unclear whether any risk would shift in this context given the availability of inverse-condemnation suits, as discussed below.

13

Second, we disagree with the court of appeals' conclusion that abrogating immunity in this context "threaten[s] separation-of-powers principles" that immunity protects. 627 S.W.3d at 537–38. To the contrary, we conclude that recognizing the Irrigation District's immunity would implicate separation-of-powers concerns as much as, or even more than, it mitigates them. The Irrigation District essentially urges us to substitute the Legislature's prerogative with the Irrigation District's. However, the Legislature created the Improvement District and granted it eminent-domain authority to fulfill its public purpose. Extending sovereign immunity into this area thus would provide a political subdivision with the unilateral ability to undermine the Legislature's allocation of condemnation power to an entity to fulfill an identified public need.

True, the condemnee entity is also addressing a public need. However, the paramount-public-importance doctrine has long provided an adequate framework for balancing the condemnor's legislatively granted condemnation authority with the condemnee's ability to serve its own public purpose. In applying the doctrine, the court defers to each entity's policy discretion by first considering whether allowing the condemnation undermines the condemnee's ability to fulfill that purpose. *See Sabine*, 46 S.W. at 786. Only after the court determines that the two purposes cannot coexist does the doctrine require an inquiry into which interest should prevail under the circumstances of a particular case. *See id.* The Irrigation District essentially asks us to replace this framework with a rigid judicial declaration that the policy decision of the condemnee public landowner should always prevail

14

unless the Legislature expressly provides otherwise. We decline to do so. Instead, we reaffirm this Court's longstanding paramount-public-importance precedent.

Third, it is well settled that a governmental entity may be sued for inverse condemnation, by either a public or private landowner, for taking the owner's property without paying just compensation. *Brazos River Auth. v. City of Graham*, 354 S.W.2d 99, 106 (Tex. 1961); *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). If a governmental entity is not immune from a takings claim on the "back end"—that is, after it has taken property without compensation—it logically follows that the entity may pursue a pre-taking eminent-domain action. The Legislature has instituted a comprehensive scheme governing condemnation proceedings precisely because a pre-taking adjudication and compensation is preferable. A rule that encourages governmental subdivisions to do the opposite, to bury the pipe now and sort out the consequences later, is improvident. *See PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2260 (2021) (discussing how divorcing eminent-domain power from the power to bring condemnation proceedings leaves those exercising the former with only one constitutional option: "[t]ake property now and require States to sue for compensation later").

This Court's precedent, which recognizes governmental immunity's limits in other contexts, also supports declining to extend the doctrine to condemnation suits. Like an ultra vires claim, a condemnation suit does not seek to infringe on the condemnee governmental entity's policy discretion. Rather, wholly immunizing the condemnee would undermine the condemnation power the Legislature

15

chose to grant to the condemnor to fulfill an identified public need. And similar to the EDJA action in *City of Conroe*, condemnation proceedings do not impose personal liability on the condemnee entity or subject the public to the costs and consequences of improvident government action. *See* 602 S.W.3d at 456.

The court of appeals found persuasive that governmental entities are immune from a trespass-to-try-title action, which, like a condemnation proceeding, is a "suit for land." *See State v. Lain*, 349 S.W.2d 579, 582 (Tex. 1961). We do not, for two reasons.

First, unlike condemnation suits, sovereign immunity from trespass-to-try-title actions serves the intended purpose of protecting the public from the costs of improvident government action and preventing litigants from controlling government action by imposing liability. *See id.* at 581 ("One who takes possession of another's land without legal right is no less a trespasser because he is a state official or employee . . . ."); *see also* 3 WILLIAM BLACKSTONE, COMMENTARIES *254–55 ("[I]n the first place, whatever may be amiss in the conduct of public affairs is not chargeable personally on the king; nor is he, but his ministers, accountable for it to the people."). By contrast, condemnation authority is intended to benefit both governmental entities and the public. *See City of Conroe*, 602 S.W.3d at 458 (noting that governmental entities "are the very entities the EDJA protects"). And rather than trying to control government action through litigation, the condemnation authority is taking legislatively authorized action by instituting a condemnation suit. *See* TEX. WATER CODE § 49.222.

16

Second, "[w]hile suits to try the State's title are barred by immunity, in some instances a party may maintain a trespass to try title action against governmental officials acting in their official capacities." *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 393 (Tex. 2011) (citing *Lain*, 349 S.W.2d at 581). Specifically, a person may obtain relief through an ultra vires suit against a government official who, acting in his official capacity, "possesses property without authority." *Id.* In that case, the person may compel the return of the property even when the official claims that title or possession is on the government's behalf. *See id.* The governmental entity, however, remains free to assert its own challenge to the plaintiff's title or seek condemnation of the property. *Lain*, 349 S.W.2d at 586. The fact that both condemnation and trespass-to-try-title actions involve title to real property does not mean that the immunity analysis is the same for both; the two actions implicate title to real property for substantially different reasons. In a trespass-to-try-title action, title itself is in dispute. In a condemnation proceeding like this one, the issue is determining just compensation for the condemned property. We find *City of Conroe* more persuasive in this context.

Finally, we reiterate that the idea that governmental immunity may even apply in eminent-domain proceedings is a relatively new development. Despite a long history of condemnation suits being pursued against governmental entities, immunity has only recently been raised and considered as a jurisdictional bar in such proceedings. The Irrigation District's assumption that those entities have always held this previously unasserted immunity rings hollow.

17

### III. Conclusion

We hold that sovereign immunity does not apply in eminent-domain proceedings and that the Irrigation District is not immune from the Improvement District's condemnation suit. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings.

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** May 19, 2023

18